UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ELLIS DAVON DUDLEY, II,

                 Plaintiff,

v.                                             5:25-CV-00974
                                               (AJB/ML)

NEW YORK STATE DEPARTMENT OF HEALTH
HUMAN AND SOCIAL SERVICES,

                 Defendant.

_____

APPEARANCES:                                   OF COUNSEL:

ELLIS DAVON DUDLEY, II
  Plaintiff, *Pro Se*
225 Allen Street
Syracuse, New York 13210

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

       The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* ("IFP") (Dkt. No. 7) filed by Ellis Davon Dudley, II ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 7), and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend. This Court previously denied Plaintiff's motion for permission to file electronically in ECF. (Dkt. Nos. 3, 6)

## I.    BACKGROUND

Liberally construed,[1] Plaintiff's Complaint and an accompanying document labeled "Affidavit of Complaint" assert that his rights were violated by the manner in which the only named Defendant, "New York State Department of Health Human and Social Services," administers the Child Support Enforcement program.[2] (Dkt. Nos. 1, 1-1.)   Although the Complaint and Affidavit of Complaint are difficult to decipher, Plaintiff generally contends that Defendant's administration of this program resulted in financial hardship to Plaintiff as well as violations of his constitutional rights due to the suspension of his driver's license for unpaid child support. (Dkt. No. 1-1 at 1-2.)

The Complaint also provides a timeline of Plaintiff's experiences with the New York State Family Court system related to child support.  Plaintiff has unsuccessfully challenged many of these family court determinations in other federal proceedings, but the causes of action and the requested relief in the present Complaint are focused on a single state agency defendant. (*See generally* Dkt. No. 1.)

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]     This Court takes judicial notice that the state agency that administers and enforces child support obligations in New York State is the Office of Temporary and Disability Assistance, Division of Child Support Enforcement.  *See Haynie v. NYS Child Support Enf't Agency*, No. 1:25-CV-0306 (MAD/TWD), 2025 WL 1332975, at *3 (N.D.N.Y. Apr. 3, 2025), *rep't and rec. adopted*, 2025 WL 1174018 (N.D.N.Y. Apr. 23, 2025) ("While Plaintiff purports to bring claims against the "New York State Child Support Enforcement Agency," the Court understands Plaintiff to be referring to the New York State Division of Child Support Enforcement, the state agency responsible for supervising the child support enforcement program*."); O'Brien v. Hansell*, No. 09-CV-629 (RRM/JO), 2010 WL 1371366, at *4 (E.D.N.Y. Mar. 31, 2010) (explaining the local, state, and federal statutory and regulatory scheme governing child support enforcement in New York).  The formal title of the agency does not change the analysis herein.  !

I denied Plaintiff's first application to proceed IFP on August 25, 2025 because Plaintiff failed to completely answer all questions on the application. (Dkt. Nos. 2, 6.)  On September 19, 2025, Plaintiff filed a new application to proceed IFP.  (Dkt. No. 7.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's current IFP application (Dkt. No. 7), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed IFP is granted.[4]  (*Id*.)

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

---

[3]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]    Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

3

(1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court

4

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Claims Against New York State

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment.  *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *see Fields v. Walthers,* No. 94-CV-1659 (RSP/GJD), 1997 WL 204308 at *2 (N.D.N.Y. April 5, 1997) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity.")  The Eleventh Amendment's immunity extends to the New York state agency that administers and enforces child support obligations. *See, e.g., Haynie v. NYS Child Support Enf't Agency*, No. 1:25-CV-0306 (MAD/TWD), 2025

WL 1332975, at *3 (N.D.N.Y. Apr. 3, 2025), *rep't and rec. adopted*, 2025 WL 1174018

(N.D.N.Y. Apr. 23, 2025) (recommending claims against the New York State Child Support

Enforcement Agency/Division of Child Support Enforcement be dismissed as barred by Eleventh

Amendment sovereign immunity); *Lions v. New York State Off. of Child Support Enf't,* No. 1:24-

CV-7181 (GHW), 2025 WL 81421, at *3 (S.D.N.Y. Jan. 10, 2025) ("The NYS DCSE is an

agency of the State of New York; it is, thus, an arm of that state and enjoys Eleventh

Amendment immunity.")

As a result, I recommend that Plaintiff's claims be dismissed because the Defendant is

immune from suit.

**B.      Challenges to State Child Support**

Plaintiff's entire Complaint is premised on a challenge to the administration and

enforcement of various child support orders pursuant to 42 U.S.C. § 1983.  Therefore, even if

Defendant was not immune from suit, there are other grounds for this Court to recommend

dismissal of the Complaint.[5]

First, to the extent that there are final state court orders or judgments that Plaintiff asks

this Court to overturn, those claims are barred by the *Rooker-Feldman* doctrine.  *Porter v. Nasci*,

No. 24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024), *rep't and*

*rec. adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024); *see also Dorce v. City of New York*,

2 F.4th 82, 101 (2d Cir. 2021)) ("Under the *Rooker-Feldman* doctrine, a federal district court

lacks authority to review a final state court order or judgment where a litigant seeks relief that

---

[5]      This same analysis provided one of the grounds for dismissal in my May 1, 2024
recommendation addressing another complaint from Plaintiff challenging his child support
obligations pursuant to 42 U.S.C. § 1983.  *Dudley v. Hochul*, No. 5:24-CV-0048 (DNH/ML),
2024 WL 1906594, at *4 (N.D.N.Y. May 1, 2024), *rep't and rec. adopted*, 2024 WL 2399913
(N.D.N.Y. May 23, 2024).

invites the federal district court to reject or overturn such a final state court order or judgment.").
"This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Porter*, 2024 WL 1142144, at *4 (citing *Sims v. Kaufman*, No. 23-CV-7927 (LTS), 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, No. 14-CV-4568, 2014 WL 5823116 (SLT/MDG), at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases . . . in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016).  Therefore, to the extent Plaintiff's requested relief would alter or overturn a final family court judgment, any such claim is barred by the *Rooker-Feldman* doctrine.  *See, e.g., Phillips v. Wagner*, No. 22-CV-0833 (DNH/ML), 2022 WL 17406092, at *3, (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims, while not entirely clear, seem to challenge an order . . . in which the Family Court determined that he owes child support . . . . Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine . . . .") (citation omitted), *rep't and rec. adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 22-CV-0581(DNH/TWD), 2022 WL 2341420 at *6 (N.D.N.Y. June 29, 2022), *rep't and rec. adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at

7

43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, No. 19-CV-2753 (JS/AYS), 2019 WL 2437849 at *3 (E.D.N.Y. June 10, 2019) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.'")). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, No. 19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (citations omitted), *rep't and rec. adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

In addition, Plaintiff's claims are likely barred by the domestic relations exception to the jurisdiction of federal courts. *Dudley v. Montaque*, No. 24-CV-0223 (BKS/TWD), 2024 WL 1464346, at *4 (N.D.N.Y. Apr. 4, 2024) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)); *Oliver v. Punter*, No. 22-CV-3580 (GRB/LGD), 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce alimony and child custody decrees . . . . This exception also

8

extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted).  Accordingly, this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support.  *See Rotondo v. New York*, No. 17-CV-1065 (GLS/DEP), 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction.  Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *rep't and rec. adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017); *Cruz v. New York*, No. 17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017), *rep't and rec. adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997).[6]

Here, better pleading could not cure the deficiencies described above. As a result, I recommend that Plaintiff's Complaint be dismissed without leave to replead.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 7) is **GRANTED**; and it is further

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the

---

[6] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

[7] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a

Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: May 13, 2026
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie
Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1] , 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

#### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2] First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 13 of 171

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)
2016 WL 865296

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection

2016 WL 865296

services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

#### 2. Undisputed Material Facts

 **\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 15 of 171

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 865296

by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 17 of 171

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

CV-4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

## B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at *5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive

played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 19 of 171

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

---

### Footnotes

1     Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2     The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3     As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4     The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5     For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 204308

1997 WL 204308
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles Mason FIELDS, Plaintiff,
v.
Thomas WALTHERS and the New York State Division of Parole, Defendants.

No. 94–CV–1659 (RSP/GJD).
|
April 15, 1997.

**Attorneys and Law Firms**

Charles Mason Fields, Fishkill, NY, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for Defendants; Anthony B. Quartararo, Assistant Attorney General, of counsel.

*ORDER*

ROSEMARY S. POOLER, District Judge.

 **\*1**  The above matter comes to me following a Report–Recommendation by Magistrate Judge Gustave J. DiBianco, duly filed on the 24th day of March, 1997. Following ten days from the service thereof, the Clerk sent me the entire file, including any and all objections filed by the partied herein. Objections have not been filed.

In his civil rights action, plaintiff alleged that defendants violated his constitutional rights with respect to a preliminary parole revocation hearing. The magistrate judge recommended that I grant defendants' motion for summary judgment because (1) the Eleventh Amendment of the United States Constitution prohibits plaintiffs suit against the New York State Division of Parole, and (2) plaintiff failed to demonstrate that defendant Thomas Walthers was personally involved in plaintiffs alleged constitutional violation.

After careful review of all of the papers herein, including the magistrate judge's Report–Recommendation, and no objections have been submitted thereto, it is

ORDERED, that:

  1. The Report–Recommendation is hereby APPROVED.

  2. The defendants' motion for summary judgment is GRANTED and the complaint is dismissed in its entirety for the reasons set forth in the magistrate judge's Report–Recommendation.

  3. The Clerk serve a copy of this Order on the parties by regular mail.

IT IS SO ORDERED.

1997 WL 204308

REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Honorable Rosemary S. Pooler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint plaintiff alleges constitutional violations with respect to his preliminary parole revocation hearing held on October 14, 1994. Plaintiff alleges that he was denied his right to counsel at his preliminary hearing.

Plaintiff seeks substantial monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (Docket # 12). For the following reasons, this court agrees with the defendants and will recommend dismissal of the complaint.

DISCUSSION

1. *Summary Judgment:*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." Id. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

2. *Eleventh Amendment:*

 **\*2**  One of the defendants in the instant case is the New York State Division of Parole. It is well settled that absent a waiver by the state, or a valid congressional override, the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against the states. *Farid v. Smith,* 850 F.2d 917, 920–21 (2d Cir.1988) (citing Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). When Congress enacted sections 1983 and 1985, it did not abrogate the states' Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F.Supp. 212, 231 (S.D.N.Y.1995)(citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

For Eleventh Amendment purposes, governmental entities of the state that are considered "arms of the state" receive Eleventh Amendment immunity. *Will v. Michigan Department of Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir.1995). The New York State Division of Parole is clearly a state entity to which the Eleventh Amendment immunity applies. Thus, the instant case must be dismissed as against the New York State Division of Parole.

3. *Personal Involvement:*

In order to be liable for damages under section 1983, the defendant must have been personally involved in the alleged constitutional violation. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 23 of 171

1997 WL 204308

In the instant case, plaintiff sues Thomas Walthers, as the Parole Officer that was responsible for the alleged violation. However, it is clear from the transcript of the preliminary parole hearing which has been submitted as part of the defendants' motion for summary judgment, that Mr. Walthers was not even present at the plaintiff's preliminary parole revocation hearing. Additionally, it is apparent that the Parole Officer had absolutely nothing to do with the appointment or the lack of appointment of counsel. It was the Administrative Law Judge (ALJ) that did not allow plaintiff the adjournment to obtain counsel. The ALJ's rationale was that plaintiff had no absolute right to counsel at a preliminary parole revocation hearing. Defendants' Exhibit B, Transcript of Preliminary Parole Revocation Hearing at 14. It was the judge's ruling that plaintiff could proceed at that stage without an attorney. *Id.* Plaintiff then decided he would leave the room because he did not wish to proceed. He voluntarily left the hearing room, and the preliminary hearing was held without him. Id. at 15.

In any event, it is clear that defendant Walthers was not personally involved in the alleged constitutional violation. Thus, the complaint may be dismissed as to this defendant.

WHEREFORE, based on the above, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Docket # 12) be GRANTED, and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp., 1997 WL 204308

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 24 of 171

2025 WL 1332975
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard Leon HAYNIE, Plaintiff,
v.
NYS CHILD SUPPORT ENFORCEMENT AGENCY, Defendant.

1:25-cv-0306 (MAD/TWD)
|
Signed April 3, 2025

**Attorneys and Law Firms**

HOWARD LEON HAYNIE, Plaintiff, pro se, 510 Broadway St., New Boston, IL 61272.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1**  The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Howard Leon Haynie ("Plaintiff"), Dkt. No. 1, along with a motion to proceed *in forma pauperis* ("IFP"), Dkt. No. 2. For the reasons set forth below, the undersigned recommends Plaintiff's complaint be dismissed.

### II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. Dkt. No. 2. Upon review, Plaintiff's IFP application demonstrates economic need. *See id.* Therefore, he is granted permission to proceed IFP.

### III. BACKGROUND

Plaintiff commenced the instant action utilizing the Court's form complaint pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1.[1] The complaint identifies one Defendant, "NYS Child Support Enforcement Agency." *Id.* at 1.

Plaintiff alleges on December 11, 2013, Defendant "New York State Child Support Enforcement (CSE) Agency ... suspended Plaintiff's Commercial Driver's License (CDL) for an alleged arrearage of $14.00, without providing proper notification or an opportunity to contest the suspension." *Id.* at 2.[2]  On May 25, 2018, "CSE again suspended Plaintiff's CDL without providing any prior notice or an opportunity to address the alleged arrearages." *Id.* From December 11, 2013, through February of 2025, Plaintiff has remained "disqualified from operating a commercial vehicle due to the continued suspension of their CDL by the CSE." *Id.* Additionally, "since December 2013 ... The CSE reported Plaintiff's alleged arrearages to credit reporting agencies as bad debt, severely harming Plaintiff's creditworthiness." *Id.* Finally, from "2023-Present ... The CSE continued to include a child who turned 22 in 2023 in the calculation and collection of child support arrears." *Id.*

The complaint lists three causes of action: (1) "Violation of Due Process (14th Amendment)," as "Defendant violated Plaintiff's due process rights under the 14th Amendment by suspending Plaintiff's Commercial Driver's License (CDL) without proper notification or an opportunity to contest the action;" (2) "Disproportionate Action," as "Defendant's suspension of Plaintiff's CDL for an alleged arrearage of $14.00, while Plaintiff was actively making payments through wage garnishment, constitutes

Haynie v. NYS Child Support Enforcement Agency, Slip Copy (2025)

2025 WL 1332975

an excessive and unreasonable action, demonstrating arbitrary and capricious conduct;" and (3) "Impact on Livelihood," as "Defendant's suspension of Plaintiff's CDL caused Plaintiff to lose employment and be unable to pursue their career as a commercial driver, leading to significant financial hardship and increased child support arrearages[.]" *Id.* at 3. [3] Plaintiff seeks: (1) "[a] declaration that Defendant's actions violated Plaintiff's constitutional rights under the 14th Amendment," (2) "[a]n order reinstating Plaintiff's CDL and removing any negative reports from credit agencies related to child support arrearages," and (3) "[c]ompensatory damages ...." *Id.* at 4.

## IV. STANDARD OF REVIEW

**\*2** Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See, e.g., Lewis v. New York State Bd. of Elections*, No. 8:24-CV-0849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) ("The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with ... the Federal Rules of Civil Procedure.") (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

**\*3** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. CONST. AMEND. XI ("[t]he Judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also, e.g., Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) ("It is well settled that the 'ultimate guarantee' of the Eleventh Amendment is that 'nonconsenting States may not be sued by private individuals in federal court.' ") (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (additional citation omitted).

This Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009); *see also, e.g., Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014) ("[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.") (internal quotations and citation omitted). "It is well-established that New York has not consented to § 1983 suits in federal court ... and that § 1983 was not intended to override a state's sovereign immunity ...." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (first citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); then citing *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)).

While Plaintiff purports to bring claims against the "New York State Child Support Enforcement Agency," Dkt. No. 1 at 2, the Court understands Plaintiff to be referring to the New York State Division of Child Support Enforcement ("NYS DCSE"), the state agency responsible for supervising the child support enforcement program. *See, e.g., Lions v. New York State Off. of Child Support Enf't*, No. 1:24-CV-7181 (GHW), 2025 WL 81421, at *2 n.4 (S.D.N.Y. Jan. 10, 2025) ("The caption of Plaintiff's Complaint lists the New York State Office of Child Support Enforcement as the defendant, which the Court understands to be the NYS DCSE, the state agency responsible for supervising the child support enforcement program."). "The NYS DCSE is an agency of the State of New York; it is, thus, an arm of that state and enjoys Eleventh Amendment immunity." *Id.* at *3 (citation omitted); *see also, e.g., Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at *7 (N.D.N.Y. Oct. 29, 2024) ("The New York State Child Support Processing Center, which appears to be a branch of the New York State Department of Social Services, would be an arm of the state for purposes of sovereign immunity.") (citing *Calderon v. New York City Dep't of Homeless Servs.*, No. 24-CV-4631 (VEC), 2024 WL 3429884, at *2 (S.D.N.Y. July 16, 2024)) (explaining, "as an agency of the State of New York, the New York State Department of Social Services is an arm of the State and is protected by Eleventh Amendment immunity ...."); *Dixon v. Jordan*, No. 23-CV-9227 (LTS), 2024 WL 37096, at *2 (S.D.N.Y. Jan. 2, 2024) ("Plaintiff's Section 1983 claims against the New York State Child Support Services are ... barred by the Eleventh Amendment ...."), *report and recommendation adopted*, 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024). Accordingly, Court recommends Plaintiff's claims against the New York State Child Support Enforcement Agency/Division of Child Support Enforcement be dismissed as barred by Eleventh Amendment sovereign immunity, pursuant to 28 U.S.C. § 1915(e). *See, e.g., Lions*, 2025 WL 81421, at *3.

 **\*4** Next, "[t]he undersigned notes that a dismissal based on the doctrine of sovereign immunity is consequently a dismissal for lack of subject matter jurisdiction." *Gerken*, 2024 WL 4608307, at *7 (N.D.N.Y. Oct. 29, 2024) (internal quotations and citations omitted). Therefore, the undersigned recommends Plaintiff's claims be dismissed without prejudice for lack of subject matter jurisdiction. *See, e.g., Phillips v. Schenectady Child Support Unite, et al.*, No. 1:24-CV-853 (BKS/PJE), 2025 WL 895035, at *10 (N.D.N.Y. Mar. 24, 2025); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 116 (2d Cir. 2017) (explaining, "a complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction ....").

Additionally, and in the alternative, this Court likely lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine and the domestic relations exception to federal jurisdiction.

"The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments ...." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). As the Second Circuit has explained:

> [F]or *Rooker-Feldman* to apply: (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Dorce*, 2 F.4th at 101 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (internal quotations omitted). "The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him." *Muhammad v. Suffolk Cnty. Support*, No. 3:24-CV-1141 (AJB/ML), 2025 WL 606560, at *7 (N.D.N.Y. Jan. 28, 2025) (internal quotations and citations omitted), *report and recommendation adopted*, 2025 WL 603917 (N.D.N.Y. Feb. 25, 2025).

"Courts have applied [the *Rooker-Feldman*] doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu v. Lopez*, No. 1:19-CV-11605 (LLS), 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases); *see also*, e.g., *Hall v. Clinton Cnty.*, No. 8:18-CV-1405 (GTS/CFH), 2020 WL 1923236, at *4 (N.D.N.Y. Apr. 21, 2020) (finding the "Plaintiff's claims, to the extent that they seek an invalidation of a Family Court child support order, are barred by the *Rooker-Feldman* doctrine" where it was apparent from the plaintiff's complaint "that Plaintiff received a child support order against him, that he now complains that the proceedings that resulted in that order caused his alleged constitutional injuries, and that the child support order was rendered before he commenced this action."); *Fernandez v. Turetsky*, No. 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Accordingly, to the extent Plaintiff seeks to challenge a prior final judgment of a New York State Court, any such claim is barred by the *Rooker-Feldman* doctrine and, therefore, subject to dismissal on that basis. *See, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023); *Muhammad*, 2025 WL 606560, at *8 (explaining, "under the *Rooker-Feldman* doctrine, the Court is barred from reviewing Plaintiff's claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order.").

**\*5** Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, No. 2:19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's

interest in enforcing the orders and judgments of its courts.') (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

Finally, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child support and custody remain outside of this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also, e.g., Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017); *Oliver v. Punter*, No. 2:22-CV-3580 (GRB/LGD), 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce, alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted). Therefore, insofar as Plaintiff seeks to challenge the enforcement of child support obligations, *see generally*, Dkt. No. 1 at 2, dismissal under the domestic relations abstention doctrine is warranted. *See, e.g., Gerken*, 2024 WL 4608307, at *6; *Muhammad*, 2025 WL 606560, at *8.

## VI. CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [4] and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1332975

---

### Footnotes

1    Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

---

2025 WL 1332975

2    Additional portions of text from the "Facts" section of the complaint appear to be cut off. *See* Dkt. No. 1 at 2.

3    The Complaint indicates "There are a total of nine counts ..... See Attached," Dkt. No. 1 at 3, however, the only document submitted with the complaint is the civil cover sheet, *see* Dkt. No. 1-1, which does not appear to contain any additional causes of action.

4    Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

5    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1174018

2025 WL 1174018
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard Leon HAYNIE, Plaintiff,

v.

NEW YORK STATE CHILD SUPPORT ENFORCEMENT AGENCY, Defendant.

1:25-CV-306 (MAD/TWD)

|

Signed April 23, 2025

**Attorneys and Law Firms**

HOWARD LEON HAYNIE, New Boston, Illinois 61272, Plaintiff, pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** On March 9, 2025, Plaintiff Howard Leon Haynie commenced this action, *pro se*, against Defendant New York State Child Support Enforcement Agency. [1] *See* Dkt. No. 1. Plaintiff alleges that Defendant suspended his Commercial Driver's License ("CDL") without notice and an opportunity to be heard, improperly calculated child support, and reported inaccurate arrears to credit reporting agencies, all in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. *See id.* Plaintiff also moved to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2.

On April 3, 2025, Magistrate Judge Therese Wiley Dancks issued a Report-Recommendation and Order granting Plaintiff's IFP motion and recommending that Plaintiff's complaint be dismissed without prejudice. *See* Dkt. No. 5. The next day, on April 4, 2025, Plaintiff filed objections. *See* Dkt. No. 6.

"Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Id.* (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at 684 (citations omitted). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* (footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review their complaint under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, ... there

is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

**\*2** Plaintiff objected to all aspects of Magistrate Judge Dancks' Report-Recommendation and Order. Plaintiff's objections are specific enough that the Court will review the issues *de novo*.

First, Magistrate Judge Dancks concluded that Eleventh Amendment immunity bars Plaintiff's complaint because the Defendant, New York State Division of Child Support Enforcement, is an agency of the state. *See* Dkt No. 5 at 6-7. Plaintiff argues that his claims are not barred by Eleventh Amendment immunity because "Plaintiff challenges ongoing constitutional violations by state officials in their official capacity, which is permissible under *Ex parte Young*, 209 U.S. 123 (1908)." Dkt. No. 6 at 2. Plaintiff describes his complaint as seeking "prospective relief to rectify procedural due process violations and ongoing harm caused by administrative actions." *Id.* He also contends that "the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, provides a framework for addressing the accuracy of credit reporting, further supporting Plaintiff's claims that sovereign immunity should not shield violations of federal law." *Id.*

"The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). "This immunity from suit encompasses not just actions in which a state is actually named as a defendant, but also certain actions against state agents and instrumentalities, including actions for the recovery of money from the state." *Id.* (citations omitted). The agency Plaintiff seeks to sue, the New York State Division of Child Support Enforcement "is an agency of the State of New York; it is, thus, an arm of that state and enjoys Eleventh Amendment immunity." *Lions v. New York State Off. of Child Support Enf't*, No. 1:24-CV-7181, 2025 WL 81421, \*3 (S.D.N.Y. Jan. 10, 2025) (citation omitted).

"The doctrine of *Ex Parte Young* is a limited exception to the general principle of sovereign immunity and allows 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quotation omitted). The *Ex parte Young* doctrine "does not apply when the state is the real, substantial party in interest." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)) (additional quotation and quotation marks omitted); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that *Ex parte Young* has "no application in suits against the States and their agencies, which are barred regardless of the relief sought"). "[A] plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991). Because Plaintiff names only a state agency as a Defendant, the *Ex parte Young* doctrine does not apply, and Plaintiff's complaint is barred by Eleventh Amendment immunity.

**\*3** Plaintiff argues in his objections that Defendant should not be protected by sovereign immunity because there are federal statutes which permit lawsuits raising claims like those Plaintiff seeks to bring. *See* Dkt. No. 6 at 2. Plaintiff cites the Fair Credit Reporting Act as an example. *See id.* The Fair Credit Reporting Act, which was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce ...," is silent as to a state or state agency's sovereign immunity. 15 U.S.C. § 1681. "Eleventh Amendment sovereign immunity may be waived in two circumstances: when Congress abrogates state sovereign immunity through the Fourteenth Amendment, or when the state itself consents to suit." *Felix v. Cnty. of Nassau*, 344 F.R.D. 441, 444 (E.D.N.Y. 2023) (citing *College Sav. Bank v. Florida Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). Congress has not abrogated New York's sovereign immunity to suits brought under 42 U.S.C. § 1983, which is the statutory mechanism Plaintiff seeks to use to challenge the alleged constitutional violations. *See Salis v. Dopico*, No. 24-1066-CV, 2025 WL 880407, \*2 (2d Cir. Mar. 21, 2025) ("State sovereign immunity was not abrogated by Section 1983, ... and New York has not consented to Section 1983 suits in federal court") (citations omitted). As such, Plaintiff's complaint must be dismissed for lack of jurisdiction. *See Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020) ("A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction") (citations omitted).

Haynie v. New York State Child Support Enforcement Agency, Slip Copy (2025)

2025 WL 1174018

In the alternative to recommending dismissal of Plaintiff's complaint on immunity grounds, Magistrate Judge Dancks discussed applicability of the *Rooker-Feldman* doctrine, *Younger* abstention, and the domestic relations exception to federal jurisdiction. *See* Dkt. No. 5 at 8-11. Plaintiff does not object to Magistrate Judge Dancks' recitation of the law concerning the doctrines; rather, he objects only to their application to his claims. *See* Dkt. No. 6 at 2-3. The Court finds no clear error in Magistrate Judge Dancks' explanation of the *Rooker-Feldman* doctrine, *Younger* abstention, and the domestic relations exception.

" 'Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions.' " *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Plaintiff argues that he is not challenging a state court decision or judgment, but is "challeng[ing] the constitutionality of administrative enforcement actions, such as CDL suspension and wage garnishment[.]" Dkt. No. 6 at 2. Plaintiff avers that "[t]his distinction is consistent with *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), which limits the doctrine's scope to direct appeals of state court judgments." *Id.*

Magistrate Judge Dancks correctly explained that " '[c]ourts have applied [the *Rooker-Feldman*] doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license.' " Dkt. No. 5 at 8 (quoting *Ganiyu v. Lopez*, No. 1:19-CV-11605, 2020 WL 1467356, *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases)). However, to the extent Plaintiff is not challenging a state court decision judgment, but an administrative determination, he is correct that the *Rooker-Feldman* doctrine would not apply. *See In re Chaitan*, 517 B.R. 419, 426 (Bankr. E.D.N.Y. 2014) ("*Rooker-Feldman* only strips federal courts of jurisdiction over cases filed after a state court renders a judgment; it is inapplicable to administrative decisions"); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004).

If Plaintiff has previously been engaged in family court proceedings concerning child support or the suspension of his license which resulted in a decision he does not agree with, the *Rooker-Feldman* doctrine would likely bar this Court's exercise of jurisdiction over any past orders. Additionally, *Younger* abstention would prevent this Court from intervening in ongoing proceedings. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004) ("The doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), and its successors[,] forbids federal courts from enjoining ongoing state proceedings").

 **\*4**  Regardless of whether Plaintiff seeks to challenge judicial or administrative determinations, the domestic relations abstention doctrine, supports this Court's decision to decline consideration of the merits of Plaintiff's complaint. *See* Dkt. No. 5 at 10-11. In Magistrate Judge Dancks' Report-Recommendation and Order, she referred to the domestic relations exception. *See* Dkt. No. 5 at 10. In the past few years, courts have articulated a distinction between the domestic relations *exception* and *abstention* doctrines in light of the Second Circuit's decision in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), and the Supreme Court's decision in *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Essentially, "[f]ederal district courts must [ ] *abstain* from exercising their federal-question jurisdiction over claims involving domestic-relations issues and dismiss those types of claims for *lack of jurisdiction* when they are asserted under diversity jurisdiction." *Ganiyu*, 2020 WL 1467356, at *4 (citing *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019)).

Here, Plaintiff brings this action under federal question jurisdiction because he alleges constitutional violations pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Although Plaintiff is from Illinois and seeks to sue a New York agency, it is not evident that he seeks damages in excess of the amount-in-controversy requirement for diversity jurisdiction and he specifically checked a box indicating that the basis of jurisdiction in his complaint is "federal question." Dkt. No. 1-1 at 1; *see also Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("The diversity statute confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States' ") (quoting 28 U.S.C. § 1332(a)). Therefore, the Court will consider whether it should abstain from exercising jurisdiction over Plaintiff's complaint, rather than applying the domestic relations exception. The Second Circuit has stated that "a federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is 'asked to grant a divorce or annulment, *determine support payments*, or award custody of a child....' " *Id.* (quoting *American Airlines*, 905 F.2d at 14) (emphasis added). That is "unless [Plaintiff] shows

that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts ....” *Id.*; *see also Deem*, 941 F.3d at 623.

Plaintiff would likely be able to challenge the child support arrears and CDL suspension in state courts. He has not asserted otherwise. Plaintiff alleges in his complaint that he did not receive notice that his CDL was going to be suspended, nor did he have the opportunity to challenge any alleged arrears resulting in the suspension. *See* Dkt. No. 1 at 2. In New York, “an obligor whose driving privileges were suspended did not actually receive the required notice, he or she ‘may at any time request a review’ from the [support collection unit (“SCU”)].” *Ganiyu*, 2020 WL 1467356, at *5 (quoting N.Y. Soc. Serv. Law § 111-b(12) (f)). “If the SCU determines that the obligor either ‘has not accumulated’ four months of support arrears, or that he or she meets any of the requirements in N.Y. Soc. Serv. Law § 111-b(12)(e) for avoiding suspension (such as making a payment arrangement or demonstrating income below certain levels), then the SCU must notify the DMV that the suspension of driving privileges must be terminated.” *Id.* (citations omitted). “If the child-support obligor is unsuccessful in that administrative challenge, he or she may seek state-court judicial review under Article 78.” *Id.* (citing, *inter alia*, N.Y. Veh. & Traf. Law § 510(4-e)(4)); *see also Simmons v. NYS Dept of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, *6 (S.D.N.Y. Nov. 5, 2019) (“If, as a result of random and unauthorized action, a child support obligor does not receive the required notice, New York law also provides an opportunity for review and termination of the suspension if the obligor makes the required showing”); *Sekou Camera v. New York City Dept of Soc. Servs.*, No. 24-CV-5886, 2024 WL 4107256, *2 (E.D.N.Y. Sept. 5, 2024).

 **\*5** Plaintiff does not explain why he cannot challenge the suspension of his CDL or the garnishment of his wages in state court. Plaintiff's claims concern child support payments and actions taken because of purported defaults on those payments. *See* Dkt. No. 1. Consideration of the validity of the decision to hold Plaintiff in arrears and suspend his CDL are domestic relations matters that courts have consistently left to be handled by state courts. *See Ganiyu*, 2020 WL 1467356, at *4-5; *Southerland v. Banks*, No. 15-CV-6088, 2015 WL 9581818, *2 (E.D.N.Y. Dec. 30, 2015). Accordingly, this Court will abstain from intervening in those matters at this time.

Plaintiff raises a separation of powers issue between Defendant and the judiciary in his objections. *See* Dkt. No. 6 at 4. He did not, however, allege any such claim in his complaint which means the issue was not before Magistrate Judge Dancks. *See* Dkt. No. 1. “The court notes that it is well-established ... that a district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.” *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015) (collecting cases). As Plaintiff did not allege any claim concerning whether non-judicial entities, such as Defendant, have certain authority, the Court will not consider that claim in reviewing the Report-Recommendation and Order.

Finally, as to whether Plaintiff should be permitted to amend his complaint, the Court concludes in the affirmative. “ ‘A pro se complaint is to be read liberally. Certainly[,] the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.’ ” *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). The Court cannot exercise jurisdiction over Plaintiff's complaint because he names a state agency as the only Defendant and that agency is protected from suit by Eleventh Amendment immunity. Even if Defendant was not immune from suit, the Court would likely abstain from reviewing Plaintiff's claims that challenge child support-related decisions. However, because Plaintiff is *pro se* and has yet to amend his complaint, the Court will afford him the opportunity to do so.[2]

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks’ Report-Recommendation and Order (Dkt. No. 5) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice and with leave to amend**; and the Court further

**ORDERS** that Plaintiff may file another amended complaint within **THIRTY (30) DAYS** of the date of this Order, and should Plaintiff file another amended complaint, the Clerk of the Court shall return this case to Magistrate Judge Dancks for review; and the Court further

**\*6  ORDERS** that, if Plaintiff fails to file another amended complaint within **THIRTY (30) DAYS** of the date of this Order, the Clerk of the Court shall enter judgment in Defendant's favor and close this case without further order of the Court; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1174018

---

**Footnotes**

1       The Court interprets Plaintiff's complaint to name the New York State Division of Child Support Enforcement as the Defendant in this action.

2       Should Plaintiff choose to amend his complaint, the Court encourages Plaintiff to review case law holding "that the availability of an Article 78 proceeding to challenge the allegedly unlawful or improper revocation or suspension of a driver's license, with or without pre-deprivation notice or a hearing, typically constitutes an adequate procedural remedy." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 303-04 (N.D.N.Y. 2019) (collecting cases); *see also Gudema v. Nassau Cnty.*, 163 F.3d 717, 725 (2d Cir. 1998).

---

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Lions v. New York State Office of Child Support Enforcement, Not Reported in Fed....

2025 WL 81421

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 35 of 171

2025 WL 81421
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Gregory LIONS, Plaintiff,

v.

NEW YORK STATE OFFICE OF CHILD SUPPORT

ENFORCEMENT, and Human Resources Administration, Defendants.

1:24-cv-7181-GHW

|

Signed January 10, 2025

**Attorneys and Law Firms**

Gregory Lions, Pennsauken, NJ, Pro Se.

ORDER OF DISMISSAL WITH LEAVE TO REPLEAD

GREGORY H. WOODS, United States District Judge:

**\*1** In 2002, the custodial parent of Plaintiff Gregory Lions' sons filed a petition for paternity in Staten Island. Plaintiff alleges that, since at least 2017, the State and City of New York have been garnishing his wages and imposing other penalties in attempt to collect his outstanding child support arrears. Because Plaintiff's claims against the State are barred by the Eleventh Amendment, and because the claims against the City are, in effect, an appeal from a state court judgement, the Court dismisses this action but grants Plaintiff 30 days' leave to amend the Complaint.

**I. BACKGROUND**

**A. Facts** [1]

Plaintiff alleges that on or about January 29, 2002, the custodial parent of his two sons filed a petition for paternity in Staten Island. Compl. at 5. He alleges that "since 2017, the New York Office of Child Support Enforcement [2] has been garnishing my wages, [3] and intercepting my Federal tax refund money ...." *Id.* Plaintiff also alleges that on September 28, 2023 a $3,500 "bail settlement from New York State" was taken "as a 'deduction for outstanding child support liens' for 'arrears' in my child support case." *Id.* He also contends that his "right to receive a passport" has been withheld. *Id.* Finally, Plaintiff alleges that "[t]he Office of Child Support Enforcement never notified me that I had become an obligor for an arrears contract" and "never furnished me with the terms of interest either." *Id.* at 4.

Plaintiff argues that "no collection actions should have taken in the first place" because "the original family court petition" stated that " '[t]he petitioner does not wish to make application [sic] for child support enforcement services.' " *Id.* at 5. Plaintiff also contends that "[t]he New York State IV-D child support law" violates due process and "is not a valid debt under the law," because "the state has been found to not properly notify individuals of child support proceedings ...." *Id.* at 4. In his prayer for relief, Plaintiff asks the Court to "order the NY State Office of Child Support Enforcement to (1) cease all arrears collection efforts" and "(2) [r]eturn $12,805.10 of arrears that it has illegally garnished from my wages, settlements, and other income." *Id.* at 6. He asserts that "[t]he actions of the New York State Office of Child Support Enforcement have negatively impacted my ability to pay my bills and support myself." *Id.* at 5. He adds that "[t]he constant mail notices from OCSE with the ever increasing amount, monthly interest of $527.93, currently at $96,787.78 has caused me a constant level of mental anguish as

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 36 of 171

Lions v. New York State Office of Child Support Enforcement, Not Reported in Fed....

2025 WL 81421

well. I am currently unemployed and receiving unemployment, due to run out the first week of December 2024, and social security benefits as my sole source of income." *Id.*

### B. Procedural History

**\*2**  Plaintiff Gregory Lions filed this action *pro se* on September 27, 2024. *See id.* Plaintiff resides in New Jersey. *Id.* at 2. He paid the fees to bring this action. Plaintiff sues the New York State Division of Child Support Enforcement (the "NYS DCSE"), and the New York City Office of Child Support Enforcement (the "NYC OCSE") (collectively, "Defendants").[4] *See* Compl. at 1–2.

Plaintiff's Complaint expressly asserts claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment's Excessive Fines Clause. *See* Compl. at 3. Because Plaintiff is proceeding *pro se*, the Court construes the complaint liberally to assert additional claims for Defendants' allegedly incorrect enforcement of Title IV-D of the Social Security Act ("Title IV-D"), and under state law, including for violations of the New York State Constitution's due process and excessive fines clauses. N.Y. Const. art. I, §§ 5 & 6.

## II. STANDARD OF REVIEW

The Court is obliged to construe *pro se* pleadings liberally. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The Court must also interpret *pro se* complaints "to raise the strongest arguments that they *suggest.*" *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

Even when the *pro se* plaintiff has paid fees to bring a civil action, the Court must dismiss the action *sua sponte* if the Court determines that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The Court may also dismiss an action *sua sponte* for failure to state a claim on which relief may be granted, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted), *abrogated on other grounds*, *Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 8 requires a complaint to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## III. DISCUSSION

**\*3**  The Court must dismiss each of Plaintiff's claims. First, all of Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment. With respect to Plaintiff's claims against the NYC OCSE, the Court is barred from reviewing Plaintiff's claims that challenge the family court judgment against him under the *Rooker-Feldman* doctrine. To the extent that Plaintiff asks the Court to modify his child support obligations, the Court must abstain under the domestic relations abstention doctrine. Plaintiff's Complaint also fails to state a claim under Section 1983. Finally, with respect to any parallel state law claims brought under the Court's diversity jurisdiction, the Court is similarly barred from considering those claims under the *Rooker-Feldman* doctrine, and lacks diversity jurisdiction to resolve those claims under the domestic relations exception.

### A. The Eleventh Amendment Bars Plaintiff's Claims Against the State

Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment because the NYS DCSE is a state agency. The Eleventh Amendment states the following: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original); *see also Green v. Mansour*, 474 U.S. 64, 68, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Unless a state waives its immunity, a district court lacks subject matter jurisdiction over claims asserted against the state. *See Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted); *see also Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." (internal quotation marks and citation omitted)).

Congress has not abrogated the states' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The NYS DCSE is an agency of the State of New York; it is, thus, an arm of that state and enjoys Eleventh Amendment immunity. *See Dixon v. Jordan*, No. 1:23-CV-9227 (LTS), 2024 WL 37096, at *2 (S.D.N.Y. Jan. 2, 2024). Thus, the Court dismisses Plaintiff's claims against the NYS DCSE under the doctrine of Eleventh Amendment immunity. [5]

## B. Plaintiff's Claims Against the City Are Either Barred or Inadequately Pleaded

### 1. The OCSE is Not a Suable Entity

**\*4**  The Court must dismiss all claims against the NYC OCSE because, as an agency of the City of New York, the NYC OCSE is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismiss all claims against the NYC OCSE.

However, in view of Plaintiff's *pro se* status, the Court substitutes the City of New York as the proper defendant pursuant to Federal Rule of Civil Procedure 21. *See Obah v. Dep't of Admin. for Children's Servs.*, 2024 WL 2848903, at *5 (S.D.N.Y. May 2, 2024), *report and recommendation adopted sub nom. Obah v. Dep't of Admin. for Child. Servs.*, 2024 WL 2848883 (S.D.N.Y. May 30, 2024). Consequently, although the Court dismiss all claims against the NYC OCSE, the Court substitutes the City of New York (the "City") in its place.

### 2. Plaintiff's Federal Claims Against the City Must be Dismissed

With respect to Plaintiff's Section 1983 claims against the City, the Court is barred from reviewing Plaintiff's claim that challenges his family court judgment under the *Rooker-Feldman* doctrine, and must abstain from considering Plaintiff's claim

seeking modification of his child support order under the domestic relations abstention doctrine. Any other claims arising under Section 1983 must be dismissed because Plaintiff has failed to plead the existence of a municipal policy that led to any alleged harm.

### i. The Rooker-Feldman Doctrine Bars Review of the State Court Proceeding

The Court is barred from reviewing Plaintiff's Section 1983 claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order. "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).

The Second Circuit "has articulated four requirements that must be met for *Rooker-Feldman* to apply: (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Dorce*, 2 F.4th at 101–02 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in original and internal quotation marks omitted). "The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him." *Davis v. Westchester Cnty. Family Court*, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017); *see generally Hoblock*, 422 F.3d at 87 ("If [a] father sues in federal court ... on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.").

 **\*5**  "Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu v. Lopez*, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases); *see also Davis*, 2017 WL 4311039, at *8 ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears"); *Hall v. Clinton Cnty.*, 2020 WL 1923236, at *4 (N.D.N.Y. Apr. 21, 2020); *Williams v. NYU Hosp. Ctr. Fin. & Payroll Support*, 2020 WL 1878119, at *3 (S.D.N.Y. Apr. 14, 2020) (citing *Remy v. New York State Dep't of Taxation and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013) (summary order)).

Here, the *Rooker-Feldman* doctrine bars the Court from reviewing any claims arising from Plaintiff's assertion that the family court violated his right to due process, and that the garnishment of his wages constitutes an excessive fine. All four of the *Rooker-Feldman* factors are met in this case. First, the Court can reasonably infer that Plaintiff "lost in state court," *Dorce* 2 F.4th at 101, as his wages have been garnished since at least 2017, his federal tax refund seized, his right to receive a passport suspended, and the state issued a "bail settlement" in 2023 "as a 'deduction for [Plaintiff's] outstanding child support liens' for 'arrears' in [his] child support case." *See* Complaint at 5.

Second, Plaintiff "complain[s] of injuries caused by a state-court judgment." *See Dorce*, 2 F.4th at 101. "Once a child support order has been entered ... [a]ny past due support is treated as a judgment by operation of law and is enforceable in the same manner as a judgment." *O'Brien*, 2010 WL 1371366, at *5 (internal citations omitted). Here, Plaintiff complains that the garnishment of $12,805 in wages and income was illegal, and asks the Court to enjoin further collection of his $96,787 unpaid balance, all of which stem from the state's child support order against him. *See* Compl. at 5–6. In seeking such an order, Plaintiff "invite[s]" the Court to review and reject a family court judgment that "rendered before the district court proceedings commenced," *Dorce*, 2 F.4th at 101, given that the family court petition was filed against Plaintiff in 2002 and collections began in or around 2017.[6] *See* Compl. at 5. Consequently, under the *Rooker-Feldman* doctrine, the Court is barred from reviewing Plaintiff's claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order.

## ii. The Domestic Relations Doctrine Requires Abstention

The Court must also abstain from considering Plaintiff's claim seeking modification of his child support order under the domestic relations abstention doctrine. In *American Airlines, Inc. v. Block*, the Second Circuit held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." 905 F.2d 12, 14 (2d Cir. 1990) (holding that court erred in not abstaining from adjudicating dispute over ex-spouse's maintenance obligations); *see Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition—in a non-diversity case involving a child custody dispute—that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.") (citations and internal quotation marks omitted).

 **\*6** Here, Plaintiff's challenge to the amount of his child support obligations falls squarely within the domestic relations doctrine. *See, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, 2019 WL 5810307, at \*4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[E]ven if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing."); *Myers v. Sara Lee Corp.*, 2009 WL 10706711, at \*10 (E.D.N.Y. Apr. 13, 2009) ("[T]he income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court. Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here ...."). Accordingly, the Court must abstain from reviewing Plaintiff's family court proceeding to the extent that he asserts a claim seeking modification of the underlying family court child support order.

## iii. The Complaint Fails to State a Claim Against the City Under Section 1983

Plaintiff's Complaint also fails to state a claim against the City under Section 1983 because he does not allege the existence of a municipal policy that gave rise to the alleged violation. *See Harris*, 572 F.3d at 73; *Wachtler*, 35 F.3d at 82. Section 1983 states in relevant part the following: "Every person who, under color of any statute ... custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983. "Under the standards of *Monell v. Department of Social Services*, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal citation omitted); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Plaintiff fails to establish the existence of a municipal custom, policy, or usage that would support a claim under Section 1983. First, Plaintiff takes issue with "[t]he New York *State* IV-D [7] child support law" and alleges that the state law violates due process because "the *state* has been found to not properly notify individuals of child support proceedings ...." Compl. at 4 (emphasis added). Consequently, on its face, Plaintiff challenges a state—not a municipal—policy.

 **\*7** Plaintiff also fails to allege that the City's enforcement of the state's IV-D program can be construed to be a municipal policy under *Monell*. The Second Circuit has "establish[ed] the framework for assessing asserted constitutional violations arising from municipal enforcement of state law." *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 688 (2d Cir. 2022). "First, [the Court] ask[s] whether the municipality had a 'meaningful choice' as to whether it would enforce the law. If it did, then [the Court] ask[s] whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers. If both conditions are met, then the municipality exercises a sufficient degree of autonomy to face liability for its policy choices." *Id.* (quoting *Vives v. City of New York*, 524 F.3d 346, 351–53 (2d Cir. 2008)).

Lions v. New York State Office of Child Support Enforcement, Not Reported in Fed....

2025 WL 81421

Plaintiff does not allege any facts that permit the Court to conclude that the City, in enforcing New York State's IV-D program, adopted a municipal custom, policy, or usage. *See Jones*, 691 F.3d at 80. Nor does he offer facts alleging that any municipal policymaker made a conscious choice to enforce the State's child support proceedings in a particular manner that violated Plaintiff's rights. *See Vives*, 524 F.3d at 351–53. For example, Plaintiff makes no allegations that the City enacted a policy of withholding notice to individuals in child support proceeding; that the City's failure to notify individuals was "sufficiently widespread and persistent;" or that "supervisory authorities must have been aware of the practice ...." *See Jones*, 691 F.3d at 81.

Second, that Plaintiff was allegedly "never notified that [he] had become an obligor for an arrears contract" or "never furnished" with "the terms of interest" also fails to allege the existence of a municipal policy because he only alleges one instance of conduct. Compl. at 4. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "*Monell*'s language makes clear that it expressly envisioned [liability for] officials 'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability under Section 1983." *Id.* (internal citations omitted). The Second Circuit has held, however, "that municipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Here, Plaintiff does not allege any additional facts showing that the single instance of conduct—that he was allegedly not notified of his child support obligations—constituted an official policy by the City to withhold notice: he does not allege that an official made a deliberate choice to engage in a practice to withhold notice from child support obligors, when compared to alternative methods; nor does he allege that an official responsible for establishing final policy made a decision to enact a policy that led to the alleged failure to provide him with notice. Plaintiff's Complaint therefore fails to adequately state a claim against the City under Section 1983. The Court dismisses Plaintiff's claims against the City, but grants Plaintiff leave to replead his claim under Section 1983 against the City in an amended complaint. [8]

### iv. There is No Private Right of Action Under Title IV-D to Enforce Substantial Compliance

**\*8** Finally, to the extent that Plaintiff seeks to enforce Title IV-D's requirement that New York State operate its child support program in "substantial compliance" with Title IV-D, he may not because the statute does not give rise to a private right of action. [9] "If a [s]tate does not 'substantially comply' with the requirements of Title IV–D," the state may be "penalize[d] ...." *Blessing*, 520 U.S. at 335. "Because 'the requirement that a [s]tate operate its child support program in "substantial compliance" with Title IV-D was not intended to benefit individual children and custodial parents' the provision [does] not create a federal right and, therefore, [is] not enforceable via Section 1983." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 511 (2d Cir. 2006) (quoting *Blessing*, 520 U.S. at 343). Although "the possibility that some provisions of Title IV-D give rise to individual rights" is not "foreclosed," Title IV–D "contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress" for a state's alleged failure to "substantially comply" with federal IV-D guidelines. *See Blessing v. Freestone*, 520 U.S. at 346–49 (holding that plaintiffs could not, through a Section 1983 action, seek a declaratory judgment that Arizona's IV-D program violated the "substantial compliance" requirements under Title IV–D, including that state agency failed to take adequate steps to obtain their child support payments, because in that context Title IV-D "contains no private remedy"); *see also Smith v. Stack*, 2024 WL 54292, at \*8 (S.D.N.Y. Jan. 2, 2024) ("[B]ecause Plaintiff does not have a private right of action to sue the defendants for their allegedly incorrect enforcement of Title IV-D, the Court dismisses these claims for failure to state a claim on which relief may be granted."); *Simmons*, 2019 WL 1988673, at \*3 (same). Thus, Plaintiff cannot pursue a private action to require New York State to "substantially comply" with Title IV-D.

### 3. Plaintiff's State Law Claims Are Dismissed

### i. The Court Declines Supplemental Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court declines to accept supplemental jurisdiction over any residual state law claims, including claims that Defendants violated the New York State Constitution's due process and excessive fines clauses. *See Triestman*, 470 F.3d at 474 (noting that pro se pleadings must be interpreted "to raise the strongest arguments that they suggest") (internal quotation marks and emphasis omitted). A federal district court may decline to exercise supplemental jurisdiction over claims under state law if it "has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c). Accordingly, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any claims under state law that may be implied from Plaintiff's pro se pleading. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (noting the "discretionary nature" of the exercise of supplemental jurisdiction).

### ii. The Court Lacks Diversity Jurisdiction Over Plaintiff's Residual State Law Claims

Finally, the Court lacks diversity jurisdiction over Plaintiff's residual state law claims. Plaintiff is a resident of New Jersey. *See* Compl. at 2. He is suing New York defendants. *Id.* at 1–2. And it appears that the amount in controversy exceeds $75,000. *See id.* at 5–6. As a result, at first blush, it would appear that the Court has diversity jurisdiction to hear any state law claims that his Complaint can be construed to raise. *See* 28 U.S.C. § 1332. That does not end the story in this case, however.

 **\*9** "Even if Plaintiff[ ] [was] able to ... establish diversity of citizenship, the Court would still lack subject matter jurisdiction over this matter pursuant to the *Rooker–Feldman* doctrine." *See Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 513 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016); *see also Andrews v. Citimortgage, Inc.*, 2015 WL 1509511, at *4 (E.D.N.Y. Mar. 31, 2015) ("Even if diversity or federal question jurisdiction were present here, the Court would not exercise jurisdiction because of the *Rooker–Feldman* doctrine.").

Additionally, under "the domestic relations doctrine exception to the court's [diversity] jurisdiction ... federal courts are divested of jurisdiction in 'cases involving the issuance of a divorce, alimony, or child custody decree.' " *See Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (summary order) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 622 (2d Cir. 2019) (distinguishing between "the domestic relations '*exception*' to subject matter jurisdiction" in diversity cases and "the domestic relations *abstention* doctrine" in federal-question cases) (emphasis original); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of [plaintiff's] child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). Federal district courts must therefore dismiss claims involving domestic relations issues for lack of jurisdiction when asserted under diversity jurisdiction. *See Deem*, 941 F.3d at 621–24.

For the same reasons that the Court must abstain from exercising its federal question jurisdiction, the Court lacks diversity jurisdiction to review Plaintiff's family court proceeding to the extent that the Complaint can be construed to assert claims seeking modification of the child support order based on violations of the New York State Constitution's due process and excessive fines clauses.

### IV. Leave to amend is granted

Plaintiff's claims are dismissed without prejudice. It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave when justice so requires."). That is especially true where, as here, a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."), and where a plaintiff is proceeding pro se and his complaint is dismissed *sua sponte*, *see Salahuddin*, 861 F.2d at 42–43; *Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000) (explaining that courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

 **\*10** Accordingly, Plaintiff is granted leave to amend the complaint. Any amended complaint must be filed within 30 days from the date of this order. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 81421

---

**Footnotes**

1       The facts are drawn from Plaintiff's Complaint. Dkt. No. 1 (the "Complaint").

2       Plaintiff lists both the "New York State Office of Child Support Enforcement" and New York City's "Office of Child Support Enforcement" as defendants, but does not specify which agency he is referring to. *See id.* at 1–2, 4. Given Plaintiff's *pro se* status, the Court reads the complaint as alleging that both agencies garnished Plaintiff's wages.

3       Plaintiff also alleges that the "Office of Child Support Collections Enforcement garnished my social security." *See id.* at 4.

4       The caption of Plaintiff's Complaint lists the New York State Office of Child Support Enforcement as the defendant, which the Court understands to be the NYS DCSE, the state agency responsible for supervising the child support enforcement program. Compl. at 1. Page two of the Complaint also lists the Human Resources Administration, Office of Child Support Enforcement as the defendant. *Id.* at 2. The Court construes this to be in reference to the OCSE, which is an agency within the city Human Resources Administration, Department of Social Services. *See O'Brien v. Hansell*, 2010 WL 1371366, at \*4 (E.D.N.Y. Mar. 31, 2010) (explaining the city, state, and federal statutory and regulatory scheme governing child support enforcement).

5       "The landmark case of *Ex parte Young* created an exception to [the] general principle [of Eleventh Amendment immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green*, 474 U.S. at 68 (internal citations omitted). Even when construed liberally, however, Plaintiff's Complaint cannot be read as challenging the constitutionality of a state official's action such that the Eleventh Amendment does not apply.

6       Plaintiff does not allege that the child support proceedings are still pending. However, to the extent that the proceedings are ongoing, this Court would likely not intervene. *See Younger v. Harris*, 401 U.S. 37 (1971).

7       Title IV-D of the Social Security Act is a federal law that "funds [state] agencies tasked with collecting child support payments." *See Chris H. v. New York*, 2017 WL 2880848, at \*7 (S.D.N.Y. July 5, 2017), *aff'd*, 764 F. App'x 53 (2d

Lions v. New York State Office of Child Support Enforcement, Not Reported in Fed....

2025 WL 81421

Cir. 2019); *see also Blessing v. Freestone*, 520 U.S. 329, 334–35 ("[E]ach State's Title IV–D agency ... must conform to federal guidelines ... each participating State must enact laws designed to streamline paternity and child support actions."); *see generally Roger of the Fam. Forrest v. 45 C.F.R.§ 75.2 IV-D Contractor Steve Banks*, 2019 WL 4194332, at *5 (S.D.N.Y. Aug. 30, 2019) ("Title IV-D underwrites States' child-support efforts and requires States 'to establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders.' ") (citing *Blessing*, 520 U.S. at 333-34); *Myers v. Sara Lee Corp.*, 2009 WL 10706711, at *4 (E.D.N.Y. Apr. 13, 2009) (discussing Title IV-D). In New York, the NYS DCSE "supervises the child support enforcement program in the State," and "[e]ach local social services district ... is required to take all steps necessary to establish, collect, and enforce child support orders." *See O'Brien*, 2010 WL 1371366, at *4. In New York City, the NYC OCSE is the body "that enforces child support orders entered in the five counties that constitute the City of New York." *Id.*

8    The Court notes, however, that should Plaintiff seek to replead, his *Monell* claims may not be timely. "Section 1983 actions in New York are subject to a three-year statute of limitations running from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal citations omitted). "Plaintiff ultimately would have to show that he neither knew nor should have known that the City's challenged conduct resulted from a policy or custom until on or after ... three years before this action was filed. Any Amended Complaint would be subject to dismissal if it were plain on its face that Plaintiff knew or should have known of the alleged policy or custom before that date." *See Chris H*, 2017 WL 2880848, at *6. The Court does not reach whether Plaintiff's claims are barred by the statute of limitations; Plaintiff alleges that his wages have been garnished since 2017 but indicates that that a new bail settlement was taken against him as recent as September 2023. Compl. at 5.

9    "The structure of each State's Title IV–D agency, like the services it provides, must conform to federal guidelines. For example, States must create separate units to administer the plan and to disburse collected funds, each of which must be staffed at levels set by the Secretary. If a State delegates its disbursement function to local governments, it must reward the most efficient local agencies with a share of federal incentive payments. To maintain detailed records of all pending cases, as well as to generate the various reports required by federal authorities, States must set up computer systems that meet numerous federal specifications. Finally, in addition to setting up this administrative framework, each participating State must enact laws designed to streamline paternity and child support actions." *See Blessing*, 520 U.S. at 334–35 (internal citations omitted).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Porter v. Nasci, Not Reported in Fed. Supp. (2024)

2024 WL 1142144

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,
v.
Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.

## ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights."[1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff."[2] *Id.* The complaint does not include any other factual allegations.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.

## II. IFP APPLICATION

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted.[3]

## III. STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that

2024 WL 1142144

a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

## IV. ANALYSIS

Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). [4]

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

### A. Failure to State a Claim

The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. *See Iqbal*, 556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured.

2024 WL 1142144

*See id.*; *see also* Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

### B. Judicial Immunity

Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings." [5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at \*2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g.*, *Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at \*4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983 against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity. [6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### C. Jurisdiction

Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See*

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 47 of 171

Porter v. Nasci, Not Reported in Fed. Supp. (2024)

2024 WL 1142144

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND

As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. [8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION
**WHEREFORE**, it is hereby

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 48 of 171

Porter v. Nasci, Not Reported in Fed. Supp. (2024)
2024 WL 1142144

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**\*6  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1142144

---

**Footnotes**

1    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

2    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

4    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. *See Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

5    According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/family/support.shtml (last visited Mar. 13, 2024).

6    Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at \*1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

Porter v. Nasci, Not Reported in Fed. Supp. (2024)

2024 WL 1142144

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 49 of 171

7  To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

8  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

9  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Porter v. Nasci, Not Reported in Fed. Supp. (2024)

2024 WL 3158645

2024 WL 3158645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,
v.
Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed June 25, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, Plaintiff, Pro Se, 175 Parkside Ave, Syracuse, New York 13207.

## <u>DECISION and ORDER</u>

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by John A. Porter, III ("Plaintiff") against Susan Hamlin Nasci, Support Magistrate employed by the Onondaga County Family Court ("Defendant"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's Objection to the Report-Recommendation and Amended Complaint. (Dkt. Nos. 4, 5.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in the Report-Recommendation, clear or otherwise: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*See generally* Dkt. No. 4.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only two points.

First, even when construed liberally, Plaintiff's "Objection" fails to contain a *specific* challenge to a finding or conclusion contained in the Report-Recommendation. (See generally Dkt. No. 5.) As a result, the "challenged" portions of the Report-Recommendation are entitled to only a clear-error review,[1] which they easily survive. In the alternative, the Court finds that those portions of the Report-Recommendation survive a *de novo* review.

Second, rather than file a specific challenge to the Report-Recommendation, Plaintiff has filed an Amended Complaint. (Dkt. No. 5.) This haste to litigate has complicated matters because, even assuming Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite that he had not yet served his Complaint,[2] an amended complaint supersedes an original complaint in all respects.[3] This means that, potentially, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Dancks' Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

**\*2** Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend his complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed until he has had the benefit of the district court's ruling on the motion to dismiss.[4]

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 51 of 171

Porter v. Nasci, Not Reported in Fed. Supp. (2024)

2024 WL 3158645

As a result, the Court has chosen to apply Magistrate Judge Dancks' Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's "Amended Complaint" (Dkt. No. 5) as a *proposed* Amended Complaint, and holding that proposed Amended Complaint in abeyance pending confirmation from him that it is indeed the Amended Complaint on which he wishes to proceed.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 4) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No 1) shall be **DISMISSED with prejudice UNLESS, within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, if Plaintiff wishes his proposed Amended Complaint (Dkt. No. 5) to serve as that Amended Complaint, he shall notify the Court of that fact in writing within thirty days of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint (by either of the two methods identified in the two prior paragraphs), it shall be automatically referred to Magistrate Judge Dancks for her review.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3158645

---

## Footnotes

1    When no specific challenge is made to a magistrate judge's report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

2    Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course *within* ... 21 days after serving it ...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served his Complaint; thus, he was arguably not yet *within* the 21-day window in which he could properly file an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never *commenced*.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

3    *See Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

4    *See Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Sims v. Kaufman, Not Reported in Fed. Supp. (2024)

2024 WL 757338

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 53 of 171

2024 WL 757338
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Richard SIMS, Plaintiff,
v.
Rachelle C. KAUFMAN; Rachel Tanguay AJSC, Defendants.

23-CV-7927 (LTS)
|
Signed February 14, 2024

**Attorneys and Law Firms**

Richard Sims, Birmingham, AL, Pro Se.

ORDER OF DISMISSAL WITH LEAVE TO REPLEAAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. By order dated September 26, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the following reasons, the Court dismisses the complaint, with 30 days' leave to replead.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

2024 WL 757338

## BACKGROUND

Plaintiff Richard Sims, who resides in Alabama, brings this complaint under the court's federal question jurisdiction, claiming that Rockland County Family Court Judge Rachel Kaufman, and Rockland Family Court Magistrate Rachel Tanguay "stripped away" his constitutional rights during child support proceedings. (ECF 1 ¶ I and page 8.) The following facts are drawn from the complaint.

On August 3, 2018, Plaintiff was "supposed to have" a remote child support hearing in his local court, but it did not happen, because Judge Kaufman "didn't follow proper protocol by sending the court the proper forms." (ECF 1 ¶ I.) Judge Kaufman told Plaintiff that it was "[his] job to deal with [his] courthouse. [He] put a court clerk one the phone so she could explain the rules to [Kaufman] but she became disrespectful and rude. So the clerk told [Plaintiff] to file a motion to get another date granted." (*Id.*) Plaintiff asserts that Defendants denied or "overlooked" all of his motions, and that he "never had a fair day in court." (*Id.* ¶ III.) Judge Kaufman held Plaintiff in default," denied him a paternity test, and "named [him] the father for both children," although Plaintiff's name is on only one of the birth certificates. (*Id.* at 8.)

**\*2** In April 2023, "JA," who appears to be the children's mother, "tried to collect funds from" Plaintiff in Alabama, but because he is "not on child support in the system," he had to hire a lawyer. A court attorney in Alabama told Plaintiff that "it's not fair how [he has] been treated"; that he "deserves a DNA test"; and that "if it was in her jurisdiction she would give [him] one." (*Id.* at 8.) Plaintiff asks that the Court "help [him] get [his] rights back." (*Id.*)

## DISCUSSION

### A. Judicial immunity

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judges are also immune from civil rights claims for injunctive relief based on actions taken in their judicial capacities, "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "A court's control of its docket is ... a judicial act because it is part of a court's function of resolving disputes between parties." *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) "Even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when the judge takes action "outside" her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings. *See Acre v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at \*5 (S.D.N.Y. Dec. 16, 2020); *Charles v. Lopez*, No. 19-CV-8706 (CM), 2019 WL 5261154, at \*2 (S.D.N.Y. Oct. 15, 2019); *Roger of the Fam. Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at \*4 (S.D.N.Y. Aug. 30, 2019) (collecting other district court cases within the Second Circuit).

Plaintiff alleges that his constitutional rights were violated because a remote hearing did not take place due to a technology problem; that he was found to be in default; that he was ordered to pay child support in the absence of a paternity test; and that he felt compelled to hire an attorney because the mother of his children made efforts to enforce the child support order in

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 55 of 171

Sims v. Kaufman, Not Reported in Fed. Supp. (2024)
2024 WL 757338

Alabama. Plaintiff, however, fails to allege any facts showing that, in presiding over Plaintiff's child support proceedings and issuing orders, Defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12.

Moreover, Plaintiff appears to seek injunctive relief, but he does not allege facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. Declaratory relief against a judge for actions taken within her judicial capacity is ordinarily available by appealing the judge's order. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (dismissing Section 1983 claim for injunctive relief because declaratory relief was available through appeal in state court); *LeDuc v. Tilley*, No. 3:05-CV-0157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) (same). Here, the remedy that is available to Plaintiff is to appeal within the state court system, rather than filing an action in federal court. Plaintiff has alleged no facts suggesting that he was unable to appeal any decision made by Judge Kaufman or Judge Tanguay. Because Plaintiff has not alleged facts suggesting that either judge violated a declaratory decree or that declaratory relief was unavailable, Section 1983 precludes any award of injunctive relief against these defendants.

## B. The *Younger* doctrine

**\*3** If Plaintiff's child support proceedings are pending in the New York Family Court, Bronx County, this Court may not intervene in them. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of the *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("Sprint"). Courts have held that pending state child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See Francis v. Dep't of Soc. Servs.*, No. 22-CV-6860 (DSS), 2023 WL 5096145, at *4 (E.D.N.Y. Aug. 9, 2023) ("The merits of that appeal – challenging both the Family Court order and Francis's need to exhaust administrative remedies through [the Department of Social Services] – implicate New York's state interest in managing and enforcing child support payments."); *Perso v. Perso*, No. 19-CV-2858 (JMA) (SIL), 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13, 2019) (same as to ongoing divorce and child support proceedings); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (same); *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) ("[T]o the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process."), *report & recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019); *Gravagna v. Eisenpress*, No. 19-CV-0700 (CM), 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019) ("[T]his Court must abstain under *Younger* from interfering in Plaintiff's ongoing state-court proceedings[ ] involving ... child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' " (citation and second alteration omitted)); *Brock v. City of New York*, No. 19-CV-0957 (BMC) (RML), 2019 WL 438356, at *3 (E.D.N.Y. Feb. 4, 2019) (applying *Younger* abstention to a claim in which the plaintiff asked the federal district court "to enjoin [a New York City official] from continuing to prosecute [the plaintiff's] child support obligations in New York family court" because "actions to enforce child support orders implicate important state interests").

Plaintiff has not alleged any facts showing bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect to his child support proceedings that may be pending in the New York Family Court, Bronx County. Thus, to the extent that Plaintiff asks this Court to intervene in those pending proceedings, the Court dismisses his claims under the *Younger* abstention doctrine. [1]

## C. The *Rooker-Feldman* doctrine

**\*4** To the extent that Plaintiff asks this Court to overturn a final order or judgment issued in his concluded child support proceedings in the New York Family Court, Bronx County, the *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order

or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine ... recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments...."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court. *See, e.g.*, *Legister*, 2020 WL 7405672, at *3 ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses any claims that essentially challenge a final decision of the New York Family Court, Bronx County, arising from Plaintiff's concluded child support proceedings in that court, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## D. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In an abundance of caution, and in light of Plaintiff's *pro se* status, the Court grants him 30 days' leave to file an amended complaint should he be able to provide additional facts in support of a viable claim arising out of his child support proceedings in state court. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action for the reasons laid out in this order.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed on immunity grounds, 28 U.S.C. § 1915(e)(2)(B)(iii) and for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), with 30 days' leave to replead.

 **\*5** The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

2024 WL 757338

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Attachment

---

Sims v. Kaufman, Not Reported in Fed. Supp. (2024)

2024 WL 757338

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

_____

_____ Civ. _____ ( _____ )

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

AMENDED
COMPLAINT

_____

_____

_____

_____

_____

_____

_____

_____

Jury Trial: ☐ Yes ☐ No

(check one)

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

I.      **Parties in this complaint:**

A.      List your name, address and telephone number. If you are presently in custody, include your
        identification number and the name and address of your current place of confinement. Do the same
        for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff      Name _____

               Street Address _____

               County, City _____

               State & Zip Code _____

               Telephone Number _____

B.      List all defendants. You should state the full name of the defendant, even if that defendant is a
        government agency, an organization, a corporation, or an individual. Include the address where
        each defendant may be served. Make sure that the defendant(s) listed below are identical to those
        contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 12/2009*                                    1

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                    6

Case 5:25-cv-00974-AJB-ML     Document 8     Filed 05/13/26     Page 59 of 171

**Sims v. Kaufman, Not Reported in Fed. Supp. (2024)**
2024 WL 757338

| Defendant No. 1 | Name |
|---|---|
| | Street Address |
| | County, City |
| | State & Zip Code |
| | Telephone Number |

| Defendant No. 2 | Name |
|---|---|
| | Street Address |
| | County, City |
| | State & Zip Code |
| | Telephone Number |

| Defendant No. 3 | Name |
|---|---|
| | Street Address |
| | County, City |
| | State & Zip Code |
| | Telephone Number |

| Defendant No. 4 | Name |
|---|---|
| | Street Address |
| | County, City |
| | State & Zip Code |
| | Telephone Number |

## II.     Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.     What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal Questions          ☐ Diversity of Citizenship

B.     If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

_____

_____

C.     If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

_____

*Rev. 12/2009*                              2

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 60 of 171

**Sims v. Kaufman, Not Reported in Fed. Supp. (2024)**

2024 WL 757338

III.    **Statement of Claim:**

State as briefly as possible the facts of your case.    Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.    Do not cite any cases or statutes.    If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.    Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _____

_____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____

_____

_____

C.    Facts: _____

_____

What happened to you?

_____

_____

_____

Who did what?

_____

_____

_____

Was anyone else involved?

_____

_____

Who else saw what happened?

_____

_____

_____

IV.    **Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____

_____

*Rev. 12/2009*                                                3

**Sims v. Kaufman, Not Reported in Fed. Supp. (2024)**
Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 61 of 171
2024 WL 757338

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _____, 20__.

Signature of Plaintiff    _____

Mailing Address    _____

_____

_____

Telephone Number    _____

Fax Number *(if you have one)*    _____

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:    _____

Inmate Number    _____

*Rev. 12/2009*                                4

**All Citations**

Not Reported in Fed. Supp., 2024 WL 757338

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Sims v. Kaufman, Not Reported in Fed. Supp. (2024)**

2024 WL 757338

---

**Footnotes**

---

1    In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted). Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992); *see id.* at 705 (allowing for the possibility that such an exception to jurisdiction could be extended to "elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody"); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of Donohue's child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). More recently, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, notwithstanding whether this Court is considering this action under its original federal question or diversity jurisdiction, it must either abstain from considering, or lacks subject matter jurisdiction to consider, any request by Plaintiff to issue a decision determining whether he owes child support.

---

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section–Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4, Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June

*Fernandez v. Turetsky,* Not Reported in F.Supp.3d (2014)

2014 WL 5823116

18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

## Factual History

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic* ] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

## Discussion

### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *affd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at \*2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at \*1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at \*2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the *Rooker–Feldman* doctrine.

## B. *Rooker–Feldman Doctrine*

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

2014 WL 5823116

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

---

**Footnotes**

1    Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

2    *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

3    *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

4    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

2022 WL 17406092

2022 WL 17406092
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,
v.
Bruce J. WAGNER; Reilly Dylion; and Rebecca Bauscher, Defendants.

1:22-CV-0833 (DNH/ML)
|
Signed November 4, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt. 105, Schenectady, New York 12307.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 3) filed by Julius Phillips ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 3), and I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without prejudice and without leave to amend.

### I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his rights were violated by Defendants Bruce J Wagner, Reilly Dylion, and Rebecca Bauscher (collectively "Defendants"), who were all involved in Plaintiff's New York State Family Court ("Family Court") child support proceeding. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that his constitutional rights were violated by Defendants when they demanded that he provide his personal information and proceeded to garnish his wages based on a child support determination against Plaintiff. (*Id.*) In addition, Plaintiff alleges that he is involved in his child's life and thus, should not have to pay child support. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following causes of action: (1) a claim that his wages were garnished without due process; (2) a claim that his rights pursuant to the Fourth, Fifth, Seventh, and Fourteenth Amendments were violated; (3) conspiracy to commit a crime and forced labor. (*Id.*) As relief, Plaintiff appears to seek a new trial in the Family Court child support proceeding. (*Id.*)

Plaintiff also filed an application to proceed *in forma pauperis*. (Dkt. No. 3.)

### II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's *in forma*

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 69 of 171

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

2022 WL 17406092

*pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*2**  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, 28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved ... before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at \*5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. The *Rooker-Feldman* Doctrine

Federal district courts lack authority to review state-court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments....").

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Federal review of such claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district-court review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the district-court proceedings commenced. *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

**\*3**  "A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself'" is barred by the *Rooker-Feldman* doctrine." *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at \*3 (S.D.N.Y. Mar. 25, 2020) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013)). "Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu*, 2020 WL 1467356, at \*3 (citing *Fernandez v. Turtsky*, 12-CV-4092, 2014 WL 5823116, at \*1, 3-4 (E.D.N.Y. Nov. 5, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016); *Leftridge v. Support Enforcement Servs.*, 12-CV-0150, 2013 WL 1947174, at \*2 (D. Conn. May 3, 2013); *Remy v. NYS Dep't of Taxation & Fin.*, 09-CV-4444, 2010 WL 3925184, at \*8 (E.D.N.Y. Aug. 18, 2010), *report and recommendation adopted by*, 2010 WL 3926919 (E.D.N.Y. Sept. 29, 2010), *aff'd*, 507 F. App'x 16 (2d Cir. 2013); *see also Adams v. Vt. Office of Child Support*, 717 F. App'x 33, 34 (2d Cir. 2017) (action seeking "an injunction relieving [the plaintiff] of the obligation to pay child support, preventing the garnishment of her future wages, and requiring the return of the monies already collected from her, as well as an award of damages for injuries caused by the child support obligation" should have been dismissed because of the *Rooker-Feldman* doctrine)).

Plaintiff's claims, while not entirely clear, seem to challenge an order by the Family Court, issued before Plaintiff filed this action, in which the Family Court determined that he owes child support. By asking this Court to issue an order allowing for Plaintiff's Family Court proceeding to be "redone" and "thrown out" (Dkt. No. 1 at 7), Plaintiff appears to challenge the validity of that order and its enforcement by garnishment. Thus, Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine, and I recommend that they be dismissed for lack of subject-matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 291 (the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction.").

### B. The Domestic-Relations Abstention Doctrine

"In *American Airlines, Inc. v. Block*, the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims could be fairly determined in the state courts." *Ganiyu*, 2020 WL 1467356, at \*4 (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). For example, the Second Circuit directed that federal district courts should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child...." *Am. Airlines, Inc.*, 905 F.2d at 14.

Plaintiff alleges that his future wages have been garnished apparently due to his child-support debt. His claims therefore involve domestic-relations issues and thus, "unless he shows that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over his claims arising from the Family Court's order and its enforcement." *Ganiyu*, 2020 WL 1467356, at \*4 (citing *Am. Airlines*, 905 F.2d at 14; *Simmons v. NYS Dep't of Soc. Servs.*, 19-CV-3633, 2019 WL 5810307, at \*4 n.2 (S.D.N.Y. Nov. 5, 2019) ("Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing")).

In New York State, a child-support debtor is entitled to the post-judgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52"). For example, when a local government's support collection unit issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. N.Y. C.P.L.R. § 5241(a)(8), (e). The appropriate agency rules on the objection and "notif[ies] the debtor of its determination within forty-five days" of service of the execution. N.Y. C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (N.Y. App. Div. 3d Dep't 2012) (noting that an applicant for relief should commence an Article 78 proceeding after exhausting his administrative remedies before a support collection unit).

**\*4**  The Complaint fails to allege facts plausibly suggesting that there are any obstacles preventing Plaintiff from receiving a full and fair determination regarding the amount of child support he owes or the garnishment of his income. As a result, in the

2022 WL 17406092

alternative, I recommend that the Court abstain from exercising its federal-question jurisdiction over Plaintiff's claims arising from those events pursuant to the domestic-relations abstention doctrine.

### C. Immunity

In the alternative, I recommend that Plaintiff's claims against Defendants Wagner and Bauscher pursuant to 42 U.S.C. § 1983, be dismissed based on the doctrine of judicial immunity.

### 1. Defendant Wagner

Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendant Wagner. *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims arising from the efforts of Defendant Wagner, in his capacity as a New York Family Court Support Magistrate, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendant Wagner is therefore immune from suit under the doctrine of judicial immunity.

As a result, in the alternative, I recommend that Plaintiff's claims against Defendant Wagner pursuant to 42 U.S.C. § 1983, be dismissed under the doctrine of judicial immunity and because those claims are frivolous. *See* 28 U.S.C. § 1915(e)(2)(b)(i), (iii); *Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

### 2. Defendant Bauscher

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

**\*5** Plaintiff's allegations against Defendant Bauscher arise out of her court-appointed representation of Plaintiff's child during the Family Court proceedings. As a result, I recommend that Plaintiff's claims against Defendant Bauscher pursuant to 42 U.S.C. § 1983, be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at \*7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

### D. Failure to State a Claim Upon Which Relief May Be Granted

Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendant Dylion are inadequately pled because he failed to allege that Defendant Dylion acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

Although it is not clear from the face of the Complaint whether Defendant Dylion was appointed by the court to represent "the defendant" in the Family Court proceeding, or whether "the defendant" in the Family Court proceeding privately retained Defendant Dylion, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. May 24, 2011) (Hurd, J.) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at \*3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at \*3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at \*3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at \*6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

As a result, in the alternative, I recommend that Plaintiff's claim against Defendant Dylion be dismissed for failure to state a claim upon which relief may be granted.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [4]

**\*6** Here, better pleading could not cure the Court's lack of subject matter jurisdiction described above. As a result, I recommend that Plaintiff's claims be dismissed without prejudice but without leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 73 of 171

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)
2022 WL 17406092

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1), because the Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17406092

---

**Footnotes**

1        The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2        The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3        Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4        *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

5        If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 74 of 171

2022 WL 17403441
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,

v.

Bruce J. WAGNER, Reilly Dylion, and Rebecca Bauscher, Defendants.

1:22-CV-833
|
Signed December 2, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt. 105, Schenectady, NY 12307.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On August 10, 2022, *pro se* plaintiff Julius Phillips ("plaintiff") filed this action alleging that defendants violated his rights in connection with a New York State Family Court child support proceeding. Dkt. No. 1. Although this matter was initially closed due to plaintiff's failure to pay the filing fee, Dkt. No. 2, the Clerk of the Court reopened the case after plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3, 4.

On November 4, 2022, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that the complaint be dismissed without prejudice, but without leave to amend. Dkt. No. 5. As Judge Lovric explained, better pleading could not cure a fundamental jurisdictional defect that arose based on the set of facts alleged; *i.e.*, clear precedent demonstrated that state judicial officers and others acting as arms of the state court are generally immune from suit under § 1983. *Id.* As for plaintiff's claims against a private attorney who appeared before the state court, Judge Lovric correctly noted that private actors generally cannot be sued under § 1983. *Id.*

Plaintiff has filed objections. Dkt. No. 7. Upon *de novo* review, the R&R will be accepted and adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED without prejudice and without leave to amend for lack of subject matter jurisdiction.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17403441

**Phillips v. Wagner, Not Reported in Fed. Supp. (2022)**

2022 WL 17403441

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 76 of 171

2023 WL 4445323

2023 WL 4445323
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Julius PHILLIPS, Plaintiff-Appellant,

v.

Bruce J. WAGNER, Reilly Dylion, Rebecca Bauscher, Defendants-Appellees.

23-68
|
April 25, 2023

N.D.N.Y., 22-cv-833, Hurd, J., Lovric, M.J.

**Attorneys and Law Firms**

Julius Phillips, Schenectady, NY, Pro Se.

Robert M. Carney, Office of the Schenectady County District Attorney, Schenectady, NY, for Defendants-Appellees.

Present: Guido Calabresi, Michael H. Park, Steven J. Menashi, Circuit Judges.

**Opinion**

**\*1** This Court has determined sua sponte that the notice of appeal was untimely filed. Upon due consideration, it is hereby ORDERED that the appeal is DISMISSED for lack of jurisdiction. *See* 28 U.S.C. § 2107; *Bowles v. Russell*, 551 U.S. 205, 214-15 (2007).

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 4445323

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

Case 5:25-cv-00974-AJB-ML   Document 8   Filed 05/13/26   Page 77 of 171

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,
v.
Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton Road, Sand Lake, NY 12153.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action *pro se* on June 2, 2022, claiming Dr. Mary O'Connor ("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1.) Plaintiff simultaneously moved to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's motion to proceed IFP, the undersigned GRANTS the motion for purposes of this review. *See id.* The undersigned now considers the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. § 1915(e). For the reasons discussed below, the undersigned recommends that the Court dismiss Plaintiff's Complaint in its entirety with leave to amend. (Dkt. No. 1.)

## I. SUMMARY OF THE COMPLAINT [1]

This is the second of two actions Plaintiff initiated against various individuals stemming from a child custody dispute in New York State Family Court. (*See* Dkt. No. 1; *see also* Case No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker I*"), Plaintiff claimed several New York State Family Court Judges, two private attorneys, and the Averill Park School District violated her First and Fourteenth Amendment rights. (Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff restates and reasserts many of the same claims against Dr. Mary O'Connor, a private individual ordered by the New State Family Court to render forensic psychological evaluations in the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.) Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and § 1343, purporting to advance several causes of action under 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and standards established and/or maintained by Defendant/s [sic] violate the Right to Free speech under the First Amendment, and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution." *Id.* at 4. Plaintiff accordingly recycles many of the same claims against Dr. O'Connor that she asserted against the Defendants in *Walker I. See id.* at 9-31. Through the first cause of action, Plaintiff claims Dr. O'Connor "religiously discriminated against" her in violation of the First Amendment. *Id.* at 9. In her second cause of action, Plaintiff claims Dr. O'Connor retaliated against her in violation of the First Amendment. *Id.* at 10. By her third cause of action, Plaintiff claims Dr. O'Connor "deprived [her] of the rights of a mother to her children and due process and freedom of speech" in violation of the First and Fourteenth Amendments. *Id.* at 12-13. Through her fourth cause of action, Plaintiff claims Dr. O'Connor discriminated against her. *Id.* at 14-19. In her fifth cause of action, Plaintiff claims Dr. O'Connor used her position

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 78 of 171

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

to "maliciously intentionally inflict harm and pain on the Plaintiff." *Id.* at 20. By her sixth and final cause of action, Plaintiff claims Dr. O'Connor engaged in sex bias discrimination. *Id.* at 25.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person

2022 WL 2341420

who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g.*, *Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

### B. Plaintiff's Section 1985 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred

among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g.*, *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

**\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g.*, *Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g.*, *Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation").) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g.*, *Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

### C. Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

**\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris,* 401 U.S. 37 (1971); *see, e.g.*, *Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal,"

proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

 **\*7**  For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 82 of 171

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

---

**Footnotes**

1      The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

2      Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3      Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

4      Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

5      The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

6      If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805462

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,
v.
Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendant, a private individual ordered by a state court to render forensic psychological evaluations in an underlying child custody dispute, discriminated against her. Dkt. No. 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

2022 WL 2805462

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

2019 WL 2437849
United States District Court, E.D. New York.

Kieth TOMCZYK, Plaintiff,

v.

NEW YORK UNIFIED COURT SYSTEM, Office of Court Administration, County of Suffolk, N.Y., Suffolk County 10th Judicial District, H. Patrick Leis, III, in Official Capacity and Personal Capacity, Jennifer Lippman, Esq., Theresa Mari, Esq., Sari Friedman, Esq., Jessica Tomczyk, State Defendants John Does 1-10 and Jane Does 1-10, Suffolk County Defendants John Does 1-10 and Jane Does 1-10, Defendants.

19-CV-2753(JS)(AYS)
|
Signed 06/10/2019

**Attorneys and Law Firms**

For Plaintiff: Kieth Tomczyk, pro se, 21 Soloff Road, Massapequa, New York 11758.

For Defendants New York Unified, Court System, Office of Court Administration, H. Patrick Leis, III: Ralph Pernick, Esq., Office of the N.Y. State Attorney General, 200 Old Country Road, Suite 240, Mineola, New York 11501.

For Defendants County of Suffolk, N.Y.: Brian C. Mitchell, Esq., Suffolk County Dept. of Law, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, New York 11788.

For Defendants Sari Friedman, Esq.: Jenna Lyn Fierstein, Esq., Matthew K. Flanagan, Esq., Catalano Gallardo & Petropoulos, LLP, 100 Jericho Quadrangle, Suite 326, Jericho, New York 11753.

For Defendants Suffolk County 10th District, Jennifer Lippman, Esq., Theresa, Mari, Esq., Jessica Tomczyk, John and Jane Does: No appearances.

MEMORANDUM & ORDER

SEYBERT, District Judge

**\*1** On May 10, 2019, Kieth Tomczyk ("Plaintiff"), acting pro se, filed a Complaint in this Court against the New York Unified Court System ("Court System"), the Office of Court Administration ("OCA"), the County of Suffolk, New York ("Suffolk County"), Suffolk County 10th Judicial District ("10th District"), the Honorable H. Patrick Leis, III, in his official capacity and personal capacity ("Justice Leis"), Jennifer Lippman, Esq. ("Lippman"), Theresa Mari, Esq. ("Mari"), Sari Friedman, Esq. ("Friedman"), Jessica Tomczyk ("Tomczyk"), State Defendants John Does 1-10 and Jane Does 1-10 ("State Does 1-20"), Suffolk County Defendants John Does 1-10 and Jane Does 1-10 ("County Does 1-20" and collectively, "Defendants"). The Complaint challenges an on-going divorce and child support enforcement action, Jessica Tomczyk v. Kieth Tomczyk, Index No. 33914/2013, in the New York State Supreme Court, Suffolk County, and seeks "damages, injunctive relief and declaratory relief for violations of his fundamentally secured rights, for violating his parental rights through a campaign of parental alienation, and violating his fundamental rights through a campaign of judicial terrorism." (Compl. ¶ 1.) More specifically, in addition to alleging a deprivation of his First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights, Plaintiff claims that the "Defendants conducted a RICO enterprise of racketeering, extortion, fraud, wire fraud, and mail fraud for profit and gain against Plaintiff as a litigant and taxpayer, thus violating 18 U.S.C. §§ 1961-68, 18 U.S.C. § 1951, 18 U.S.C. § 1341, and other violations and causes of action." (Compl. ¶¶ 3-4, 17.) Plaintiff paid the filing fee to commence this action.

**Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)**

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

Because Plaintiff seeks to challenge his on-going state court divorce/child support enforcement action, this Court lacks subject matter jurisdiction to adjudicate his claims for the reasons that follow.

BACKGROUND

Plaintiff's voluminous Complaint is eighty-three typed pages and is comprised of 281 paragraphs with an additional 771 pages of exhibits. Though styled as a civil rights and RICO action, Plaintiff seeks to challenge rulings made in an underlying state court divorce and child support enforcement case pending in New York State Supreme Court, Suffolk County (the "State Court"), under Index No. 33914/2013 (the "State Case"). (See generally Compl., D.E. 1.) Plaintiff also seeks to recover a damages award in the sum of $ 200 billion dollars on each of his claims. (Compl. at 55-57, 60, 62, 69, 72, 74, 77-79, 81-82.)

Plaintiff is no stranger to this Court. The instant Complaint is Plaintiff's second attempt to bring his on-going state court matrimonial and child support enforcement action to this Court. In June 2017, Plaintiff paid the Court's $ 400 filing fee and unsuccessfully sought to remove the State Case to this Court (see Tomczyk v. Tomczyk, 17-CV-3630 ("Tomczyk I")). By Memorandum and Order dated June 29, 2017, the Court sua sponte remanded the action to the State Court pursuant to 28 U.S.C. § 1447. (See Tomczyk I M&O, D.E. 6.) The Court cautioned Plaintiff that, "under the domestic relations exception to this Court's subject matter jurisdiction, 'divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds[ ]' [quoting] Marshall v. Marshall, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L. Ed. 2d 480, 495 (2006)" and that "jurisdiction over the Complaint is likely barred by the domestic relations exception to the jurisdiction of the federal courts." (See Tomczyk I M&O at 4.) Notwithstanding the Court's guidance, Plaintiff has paid the $ 400.00 filing fee again and continues his attempt to bring the State Case to this Court.

DISCUSSION

I. Standard of Review

**\*2** Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the court lacks jurisdiction over the matter. FED. R. CIV. P. 12(h)(3); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000).

II. The Domestic Relations Exception Bars Plaintiff's Claims

Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. Marshall, 547 U.S. at 308, 126 S. Ct. at 1746 (internal quotation marks and citation omitted); Mitchell-Angel v. Cronin, 101 F.3d 108 (2d Cir. 1996) (unpublished opinion); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2214-15, 119 L. Ed. 2d 468 (1992)). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Applying these principles, courts in the Second Circuit have abstained from controversies that, regardless of how a plaintiff characterizes them, "begin and end in a domestic dispute." Tait v. Powell, 241 F. Supp. 3d 372, 377 (E.D.N.Y. 2017) (citation and quotation marks omitted); see also Martinez v. Queens Cty. Dist. Atty., 596 F. App'x 10, 12 (2d Cir. 2015) (applying domestic relations exception to plaintiff's conspiracy claim against state judges and officials involved in divorce proceeding and reasoning that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," even if parties are not seeking a custody decree).

As is readily apparent, Plaintiff's claims here seek to challenge determinations in the State Case. Such claims unquestionably implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations. Ankenbrandt, 504 U.S. at 714, 112 S. Ct. at 2221 ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.") (internal quotation marks and citation omitted).

Although Plaintiff styles some of his claims as raising statutory and constitutional issues, the allegations stem from an on-going state domestic relations matter and are thus outside this Court's jurisdiction. McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (former husband's 42 U.S.C. § 1983 action in which he claimed that his constitutional rights were violated in proceedings in which former wife obtained upward adjustment of child support would require the court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings and, therefore, the district court did not have subject matter jurisdiction) (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations)); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders).

 *3  Accordingly, because Plaintiff challenges the underlying, on-going State Court matrimonial and child support enforcement action, the Court lacks subject matter jurisdiction under the domestic relations exception to this Court's jurisdiction. The Complaint is thus DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3).

III. Younger Abstention also Precludes this Court from Exercising Jurisdiction

Plaintiff seeks declaratory and injunctive relief that would cause this Court to intervene in Plaintiff's ongoing state-court divorce and child support proceedings. Under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and its progeny, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court, in Sprint Communications, Inc. v. Jacobs, clarified that district courts should abstain from exercising jurisdiction only in three "exceptional circumstances." 571 U.S. 69, 78, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013). These involve: "(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Commc'ns, Inc., 571 U.S. at 73, 134 S. Ct. 588). The Supreme Court explained that "these three 'exceptional' categories ... define Younger's scope." Sprint Commc'ns, Inc., 571 U.S. at 78, 134 S. Ct. at 591.

Here, Younger and Sprint Commc'ns, Inc.'s require this Court to abstain. Plaintiff's federal Complaint "implicates the way that New York courts manage their own divorce and custody proceedings--a subject in which 'the states have an especially strong interest.' " Falco, 805 F.3d at 427 (quoting Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973)). Additionally, New York has an important interest in the accurate and bias-free functioning of its judicial system. See, e.g., Pennzoil v. Texaco, Inc., 481 U.S. 1, 12–14, 107 S. Ct. 1519, 1526–28, 95 L. Ed. 2d 1 (1987) (state interest in regulating judicial procedures); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982) (state interest in functioning of judicial system). Accordingly, this Court abstains under Younger from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and "implicat[ing] a State's interest in enforcing the orders and judgments of its courts." Sprint Comm'ns, Inc., 571 U.S. at 72-73, 134 S. Ct. at

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

588. Therefore, Plaintiff's claims for injunctive and/or declaratory relief are DISMISSED WITHOUT PREJUDICE on Younger abstention grounds as well. [1]

### IV. The Rooker-Feldman Doctrine also bars Plaintiff's Claims

**\*4** Even if Plaintiff's Complaint was not barred by the domestic relations exception and/or Younger abstention, the Rooker-Feldman doctrine precludes review of Plaintiff's claims in this Court. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-17, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923), the Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments. "Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state court decisions." Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks and citation omitted).

There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his [or her] complaint in the form of a civil rights action." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citations omitted). In addition, a plaintiff cannot circumvent Rooker-Feldman's bar by recasting his claims as civil rights violations or as RICO claims. Davidson v. Garry, 956 F. Supp. 265, 269 (E.D.N.Y. 1996)

Here, Plaintiff's allegations seek to collaterally attack the state court's orders against him relating to child support and visitation with his children. Plaintiff who has lost in state court and who now complains of injuries caused by the state court, invites this Court to review and reject the state court orders, all of which were issued before Plaintiff filed his Complaint in this Court on May 10, 2019. In broad terms, Plaintiff claims that an overarching racketeering enterprise tainted the state court action, and those involved conspired to, among other things, imprison Plaintiff for failing to pay his court-ordered child support and maintenance obligations. Plaintiff's claims here hinge on his allegations of unlawful conduct in the underlying state court action, and invite this Court to review and reject such conduct. Thus, because all the Rooker-Feldman requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims. Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3) on the additional ground that the Rooker-Feldman doctrine divests this Court of jurisdiction. [2]

### V. Immunity Also Bars Plaintiff's Claims

#### A. The Eleventh Amendment

**\*5** The Eleventh Amendment bars suits brought by a state's own citizens in federal court. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Alden v. Maine, 527 U.S. 706, 712, 119 S. Ct. 2240, 2246, 144 L. Ed. 2d 636 (1999)). It is well-established that, as an agency or arm of the State of New York, the New York Unified Court System, the Office of Court Administration, and the 10th Judicial District, are immune from suit under the Eleventh Amendment. Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) ("[T]he New York State Unified Court System is an arm of the State ..., and is therefore protected by Eleventh Amendment sovereign immunity"); Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 734 (S.D.N.Y. 2011), aff'd sub nom., Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. 2014). The Supreme Court instructs that the Eleventh Amendment gives a state government immunity from suit, not just from liability. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 144, 113 S. Ct. 684, 687, 121 L. Ed. 2d 605 (1993) (citation omitted).

In addition, insofar as Plaintiff seeks to recover a monetary award against Justice Leis, Mari (the Court-appointed law guardian for the children), and the unnamed State Defendants in their official capacities, they are immune from suit under the Eleventh Amendment. Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986); Pennhurst State Sch. &

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

Hosp. v. Halderman, 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-08, 79 L. Ed. 2d 67 (1984). Because Section 1983 does not operate as a waiver of New York's Eleventh Amendment immunity and New York has not consented to such suits in federal Court, Walter v. Queens College, 18-CV-3060, 2019 WL 2342700, *4 (E.D.N.Y. June 3, 2019) ("Congress did not waive the states' Eleventh Amendment immunity from suit when it enacted Section 1983"), Plaintiff's claims against the State of New York, the New York Unified Court System, the Office of Court Administration, the 10th District, Justice Leis, Mari, and the unnamed State Defendants in their official capacities are barred by the Eleventh Amendment and are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. See, e.g., Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, 116 S. Ct. 1114, 1121, 134 L. Ed. 2d 252 (1996) (a claim that is barred by a state's sovereign immunity is properly dismissed under the Eleventh Amendment for a lack of subject matter jurisdiction).

### B. Absolute Judicial Immunity

Further, to the extent that Plaintiff seeks prospective injunctive relief from Justice Leis in his official capacity (which is not barred by the Eleventh Amendment) such claims are barred by absolute judicial immunity. It is well-established that judges have absolute judicial immunity from suit for their judicial actions. Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."). This absolute "judicial immunity is not overcome by allegations of bad faith or malice" nor can a judicial officer be deprived of immunity "because the action he took was in error or was in excess of his authority." Mireles, 502 U.S. at 11, 13, 112 S. Ct. at 288 (internal quotation marks and citations omitted; ellipsis omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Id. at 11–12, 112 S. Ct. at 288.

Here, Plaintiff complains of conduct allegedly performed by Justice Leis while presiding over the underlying state court proceeding. There is nothing in the Complaint from which the Court could reasonably construe that any alleged misconduct occurred outside of that capacity or that Justice Leis lacked jurisdiction over the proceedings. Thus, as is readily apparent, Justice Leis is entitled to absolute judicial immunity. Plaintiff may seek to appeal the adverse ruling he seeks to challenge here within the state court system, but he may not subject Justice Leis to personal liability in this Court. Accordingly, Plaintiff's claims against Justice Leis are DISMISSED. [3]

### VI. The All Writs Act

 **\*6**  Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir. 1999). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. See Malley v. N.Y. City Bd. of Educ., 112 F.3d 69 (2d Cir. 1997) (per curiam) (filing injunction may issue if numerous complaints filed are based on the same events); In re Martin-Trigona, 9 F.3d 226, 227-28 (2d Cir. 1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

The instant Complaint is Plaintiff's second attempt to bring his on-going divorce and child support enforcement action pending in the New York State Supreme Court, Suffolk County, to this Court. Plaintiff is cautioned that this Court will not tolerate frivolous filings. The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). The Court is especially cognizant of Plaintiff's pro se status and has considered his submissions in as positive a light as possible. Nonetheless, the Court now warns Plaintiff that similar, future attempts to bring his divorce and/or child support enforcement action to this Court or any new complaint concerning the same subject matter as set forth in the instant Complaint will not be tolerated. Should Plaintiff continue in this course of action, the Court will order Plaintiff to

**Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)**

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

show cause why an order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court should not be entered.

Finally, Plaintiff is cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, see Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants ..."), and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him. See FED. R. CIV. P. 11; In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"); Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) (" 'A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.' ") (quoting Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam)).

CONCLUSION

For the reasons set forth above, the Complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. Plaintiff's claims are barred by Younger abstention, the Domestic Relations exemption, the Rooker-Feldman doctrine, and immunity. Plaintiff is warned that similar, future complaints will not be tolerated. If Plaintiff persists in this course of conduct, the Court may issue an Order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court after affording Plaintiff notice and an opportunity to be heard. Plaintiff is also cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him.

 **\*7**  Although Plaintiff paid the filing fee in this Court, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore, should Plaintiff seek leave to appeal in forma pauperis, such status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2437849, RICO Bus.Disp.Guide 13,190

---

**Footnotes**

1    Notably, insofar as Plaintiff seeks to challenge the judgment of contempt entered against him for failing to pay child support, such claims fall squarely within the scope of abstention. See, e.g., Juidice v. Vail, 430 U.S. 327, 339, 97 S. Ct. 1211, 1219, 51 L. Ed. 2d 376 (1977) (holding that Younger required the district court to abstain in an action that sought to challenge the statutory contempt procedures in New York); see also Heck v. Humphrey, 512 U.S. 477, 486, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). Moreover, New York courts provide process for individuals who wish to challenge their contempt proceedings. See N.Y. C.P.L.R. § 7001; People ex rel. Foote v. Lorey, 28 A.D.3d 917, 918, 813 N.Y.S.2d 798 (3d Dept. 2006) (addressing a petition for a writ of habeas corpus filed pursuant to N.Y. C.P.L. Article 70 challenging a family court order of contempt). Thus, Plaintiff has an adequate avenue for review of the contempt order in state court.

2    Given that this Court lacks subject matter jurisdiction, it need not address Plaintiff's Section 1983, 1985, and 1986 claims. However, because a Section 1983 claim requires a plaintiff to "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States", Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (internal quotation marks and citation omitted), his Section 1983 claims would fail as a matter of law because Lippman, Tomczyk, and Friedman are not state actors and Plaintiff has not alleged a plausible conspiracy claim. Similarly, Plaintiff's Section 1985 and 1986 claims would also fail. Section 1985 requires: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013) (internal quotation marks and citation omitted); see also 42 U.S.C. § 1985(2)-(3). A claim for conspiracy under Section 1985 "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Robinson, 508 F. App'x at 9 (internal quotation marks and citation omitted). Because Plaintiff does not allege he is a member of a protected class or that he was a victim of class-based, invidiously discriminatory animus, his Section 1985 claim is implausible. A Section 1986 claim is premised upon the validity of a claim under Section 1985. Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (dismissing Section 1986 claims because they are contingent upon valid Section 1985 claims). Accordingly, Plaintiff's Section 1986 claim is implausible. Asensio v. Roberts, 19-CV-3384, 2019 WL 1877386, *3 n.2 (S.D.N.Y Apr. 26, 2019) ("And, if Plaintiff cannot allege sufficient facts to state a § 1985 claim, he cannot state a related claim under 42 U.S.C. § 1986.").

3    Plaintiff's RICO claims would also fail. To bring a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983) quoting 18 U.S.C. § 1962. As is readily apparent, the Complaint is silent, for example, as to how Defendants' activities in the underlying matrimonial and child support enforcement action in Suffolk County affected interstate or foreign commerce.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 92 of 171

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

2019 WL 5150196

2019 WL 5150196
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,

v.

Honorable Cecily L. MORRIS, Judge, New York State Family Court: County of St. Lawrence, Defendant.

Civ. No. 8:19-CV-97 (BKS/DJS)

|

Signed 04/10/2019

**Attorneys and Law Firms**

ROBERT G. BOWMAN, Plaintiff, Pro Se, 104 Prospect Street, Gouverneur, NY 13642.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by Plaintiff Robert Bowman. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

## I. INTRODUCTION

The following facts are drawn from the *pro se* Complaint as well as the third Department decision of *St. Lawrence Cty. Support Collection Unit ex rel. Bowman v. Bowman*, 152 A.D.3d 899 (N.Y. App. Div.), *appeal dismissed sub nom. St. Lawrence Cty. Support Collection Unit v. Bowman*, 30 N.Y.3d 1032 (2017), which is referred to and specifically referenced in the Complaint. [1] *See* Compl. at ¶¶ 32-35. Plaintiff is the subject of a St. Lawrence County Family Court order of child support. Compl. at ¶¶ 15-24; *Bowman*, 152 A.D. 3d at 899. At issue in this proposed federal action is a 2003 Family Court consent order regarding child support, a December 2007 consent order, and a November 2011 modification order. *Id.* Further, in 2015, Plaintiff's ex-wife, through the St. Lawrence County Support Collection Unit, commenced a proceeding in state court alleging that Plaintiff willfully failed to make payments required by the November 2011 order. *Id.* As a result of that action, a money judgment was entered against Plaintiff. *Id.*

In March 2016, Plaintiff filed an *ex parte* motion to show cause in St. Lawrence Family Court asking the court to vacate the 2003, 2007, and 2011 support orders. *Id.* The Family Court denied Plaintiff's motion on timeliness grounds, as well as his failure to establish a reasonable excuse for his default. *Id.* Plaintiff appealed that denial to the Appellate Division, Third Judicial Department. The Third Department rejected Plaintiff's appeal upon the grounds that an appeal of an *ex parte* motion to issue an order to show cause is not available as of right, and that Plaintiff failed to provide an argument for relief on the merits pursuant to CPLR 5704(a). *Bowman*, 152 A.D.3d at 899. Thereafter, the Court of Appeals dismissed Plaintiff's appeal to that Court, noting that the order appealed from does not finally determine the proceedings within the meaning of the Constitution. *Bowman*, 30 N.Y. 3d 1032. Having failed at all levels of state court review, Plaintiff now commences this action pursuant to 42 U.S.C. § 1983. While the Complaint specifically asks for declaratory and injunctive relief, it is clear that the primary focus of what Plaintiff

2019 WL 5150196

seeks is an invalidation of the previously issued support orders. *See* Compl. at ¶ 46 ("As a direct and approximate (sic) result of Defendant['] violation of plaintiff's federal right under 42 USC 667(b)(2), plaintiff has suffered severe ... financial injuries.").

## II. DISCUSSION

**\*2** Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at \*3 (N.D.N.Y. Feb. 25, 2015).

### A. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at \*3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

2019 WL 5150196

**\*3** In the present case, Plaintiff cites to a violation of federal statutory and constitutional law relating to child support awards, and seeks redress under the Civil Rights Statute, 42 U.S.C. § 1983. The jurisdictional issues in this case are therefore multifaceted. Does the federal statute at issue create rights enforceable under section 1983? Does the First Amendment right of access cause of action state a claim? Even if the answer to either of these questions is yes, are there exceptions to the Court's jurisdiction which preclude the Court from assuming jurisdiction over the claims?

### B. The Proposed Laws Action

42 U.S.C. § 1983 makes actionable not only constitutional violations but also violations of those rights secured by the "laws." However, not every violation of a federal law is enforceable under section 1983, and it is incumbent upon a prospective 1983 plaintiff to assert a violation of a federal "right" and not simply that he or she benefits from the federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The Supreme Court's most recent laws decision emphasizes that, to be enforceable by a private plaintiff under section 1983, the statute must establish an "unambiguously conferred right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that the Federal Education Rights Privacy Act did not support a section 1983 claim as the provisions of the statute relied upon "contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the ... distribution of public funds....").

The Supreme Court has provided specific guidance regarding the federal statute at issue in the present lawsuit, Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b. In *Blessing*, five mothers due child support payments brought a section 1983 suit claiming that they had a right to have the State of Arizona substantially comply with the federal mandate regarding its child-support enforcement programs, especially as it relates to support payments. *Blessing v. Freestone*, 520 U.S. at 333-34. The plaintiffs, in justifying their claim, relied upon the statute's provision that in the event that the State had not substantially complied with the dictates of the federal law, the Secretary of the Department of Health and Humans Services could reduce the federal grant to that particular state. *Id.* at 335; 42 U.S.C. § 609(a)(8); 45 C.F.R. § 305.20 (1995).

The Supreme Court agreed that the plaintiffs in the action benefitted from the federal statute, and further, that Arizona's efforts under the statute were "less than stellar," but, nevertheless, it did not authorize a section 1983 claim based upon the facts presented. In reviewing the remedial scheme, the Supreme Court concluded:

> Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *systemwide* performance of the State's Title IV-D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied.... Moreover, even upon a finding of substantial noncompliance, the Secretary can merely reduce the State's AFDC grant by up to five percent; she cannot, by force of her own authority, command the State to take any particular action or to provide any services to certain individuals. In short, the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent. As such, it does not give rise to individual rights. [2]

**\*4** *Blessing v. Freestone*, 520 U.S. at 343-44 (emphasis in the original).

In the present case, Plaintiff seeks to avoid the effect of a judgment for failure to pay child support, and to declare illegal the child support obligation identified by the Family Court. Plaintiff points to 42 U.S.C. § 667, "State guidelines for child support awards," and notes that it creates a rebuttable presumption that a support award should be within such guidelines. 42 U.S.C. § 667(b)(2). That Statute states in pertinent part, as follows:

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 95 of 171
Bowman v. Morris, Not Reported in Fed. Supp. (2019)
2019 WL 5150196

**(a) Establishment of guidelines; method**

Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the state....

**(b) Availability of guidelines; rebuttable presumption**

**(2)** There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, *as determined under criteria established by the State*, shall be sufficient to rebut the presumption in that case.

*Id.* (emphasis added).

In his Complaint, Plaintiff does not allege that the State of New York did not create such guidelines, or that the support order applied to him does not in fact fall within those guidelines; indeed a careful reading of his Complaint confirms that it does. Compl. at ¶ 43 ("Plaintiff's[ ] application for the issuance of an order to show cause, was legally sufficient to overcome the presumptive child support award ..."). He maintains instead that the Family Court erred when it failed to accept his rebuttal argument [3] that the guidelines should not apply in his case upon the grounds that they are unjust or inappropriate. Compl. at ¶¶ 36-48. [4]

The Complaint, as it presently stands, is insufficient to confer jurisdiction upon the federal courts. The provisions of Title IV-D relied upon by Plaintiff do not create an individualized right to have a federal court review his support order. While the statute refers to the establishment of child support award guidelines, it makes clear that they are exactly that: guidelines to which exceptions can be made. The statute does indicate that in the event that the state were to apply an award outside the presumptive guidelines, that it should set forth its reasons for doing so, relying upon guidelines to be set by the state. 42 U.S.C. § 667(b)(2). The statute says nothing more, and certainly provides no guidance for federal courts to calculate a below-guideline support order. In other words, the statutory provision sets forth general standards concerning support award guidelines applicable to the states, but it does not create individualized federal rights. At no point does the statute state, or even intimate, that an affected parent has a claim in federal court based upon that parent's belief that a particular state child support order is in error. *De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 254 (D.P.R. 2013) ("Here, the statute does not contain any rights-creating language or focus on individuals. Rather, the statute simply imposes a requirement on states to periodically review their child support guidelines. *See* § 667. Therefore, no private right of action is available to Plaintiffs to enforce § 667 by way of § 1983."); *see also Jones v. State*, 2014 WL 4630933, at *1 (W.D. Mo. Sept. 16, 2014) ("[T]he Family Support Act of 1988, Pub.L. 100-485, required the states to enact mandatory, or presumptively correct, guidelines for awards of child support in order to continue to participate in the federal Aid to Families with Dependent Children Program; and to operate child support enforcement programs. The Act makes no provision for suit by private parties in federal court.").

**\*5** Accepting Plaintiff's argument that federal courts should utilize this statute to confer jurisdiction and decide child support orders would violate nearly all the traditional "rights-creating" requirements identified by the Supreme Court. As noted above, there is no indication that the statute itself was intended to benefit Plaintiff in particular. *Cuvillier v. Taylor*, 503 F.3d 397, 406 (5th Cir. 2007) (construing the child support provisions of Title IV-D, and noting that "individuals may be beneficiaries even though Congress did not confer a right on them."). The statute itself does not establish individual rights with sufficient specificity so that they are capable of enforcement by the federal courts. *Blessing v. Freestone*, 520 U.S. at 340-41. That a particular parent may rebut the projected support guidelines by a standard that is left to be developed by the states, certainly falls under the category of "vague and amorphous." *Id.* Further, the enforcement statute provided for in the support section of Title IV-D is limited to lawsuits by states, and only where there has been preapproval by the Secretary of Health and Human Services. 42 U.S.C. §§ 652(a)(8) & 660.

2019 WL 5150196

Accordingly, the Complaint as presently pled does not identify a particular right created by a federal statute enforceable under section 1983, and therefore it should be dismissed at this initial stage. However, even if an enforceable federal right were identified, this case runs afoul of other exceptions to federal court jurisdiction.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, as the present *pro se* Complaint seeks to overturn a child support decision of the St. Lawrence County Family Court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017); *see also McArthur v. Bell*, 788 F. Supp. 706, 708-09 (E.D.N.Y. 1992) ("[T]o decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings.... That is not the role of this Court.").

### 2. The Rooker-Feldman Doctrine

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine "divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Here, Plaintiff is challenging the support judgment entered against him, and therefore all four elements of *Rooker-Feldman* are present in this case, and the matter should be dismissed. *Fernandez v. Turetsky*, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 Fed. Appx. 103 (2d Cir. 2016) ("Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases); *see also Dinsio v. Appellate Div., Third Dep't*, 2017 WL 3016832, at *10-12 (N.D.N.Y. July 14, 2017), *reconsideration denied*, 2018 WL 1156005 (N.D.N.Y. Mar. 5, 2018).

### 3. Younger Abstention

**\*6** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the

2019 WL 5150196

state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (summary order) (same). In this case Plaintiff specifically seeks injunctive relief "restraining the Defendant ... from any further violations of Title IV-D." Compl. at ¶ 68(7). Such relief would make little sense, or be moot, if proceedings were not ongoing in Family Court. Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### C. Plaintiff's First Amendment Right of Access Claim

Plaintiff's Second Cause of Action, also seeking declaratory relief, alleges that Plaintiff's inability to challenge, in Family Court, the presumptive child support award calculated under New York States' child support guidelines, violates his First Amendment right of access to the courts. Compl. at ¶¶ 49-67. The Supreme Court has generally recognized this type of claim. *See Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971) ("... the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process."). As the Supreme Court has further articulated, however, a backward-looking right of access claim generally alleges that official action is presently denying the plaintiff the opportunity to litigate his case, and seeks to remove that frustrating condition. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). Of course, due process is not necessarily violated every time a defendant in a civil case does not have a merits hearing. The Supreme Court has noted as an example that this may occur where a defendant does not timely respond and a default is entered. *Boddie v. Connecticut*, 401 U.S. at 375-78.

In the present case it is difficult to discern exactly what Plaintiff's right of access claim really is, and as such Plaintiff's second cause of action fails to state a claim. In the event that Plaintiff is resting his claim upon the rebuttable presumption set forth in 42 U.S.C. § 667(b)(2), as noted *supra*, there are no actionable individual federal rights that flow from that statute. Plaintiff cannot simply resurrect a faulty "laws" action by construing it as a right of access claim.

While the Court would normally allow Plaintiff an opportunity to replead a cause of action that fails to state a claim, any such right of access claim would also run contrary to the jurisdictional limitations previously detailed in this opinion, including the domestic relations exception and the *Rooker-Feldman* doctrine. *See Kneitel v. Palos*, 2015 WL 3607570, at *4-5 (E.D.N.Y. June 8, 2015) ("However characterized, Plaintiff's claims fundamentally challenge state court child support orders."). In addition, to the extent Plaintiff seeks to use this claim to essentially appeal unfavorable determinations in state court, "[d]istrict courts 'do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,' and '[r]eview of those decisions may be had only' in the Supreme Court of the United States." *Cassidy v. Madoff*, 2018 WL 5792786, at *5 (N.D.N.Y. Nov. 5, 2018) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). Therefore, Plaintiff's second cause of action should be dismissed.

### D. Plaintiff's State Law Claims

**\*7** Plaintiff attempts, possibly, to assert state law claims against Judge Morris based upon alleged violations of the New York State Family Court Act and the Domestic Relations Law. Compl. at ¶¶ 56-59. In light of the recommendation that all of Plaintiff's federal claims against Judge Morris be dismissed, the Court also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law and state constitutional claims, without prejudice, subject to refiling

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 98 of 171

**Bowman v. Morris, Not Reported in Fed. Supp. (2019)**
2019 WL 5150196

in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's federal claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Medina v. Cuomo*, 2015 WL 13744627, at *15 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016).

### III. CONCLUSION

Plaintiff requests that the federal court review his state court support award in light of his particular financial condition and conclude that the Family Court judge's determination was in error. This it should not, and cannot, do. Plaintiff points to the federal statute regarding guidelines for child support, but that statute creates no individually enforceable rights. Plaintiff's First Amendment access to the courts claim is factually and legally defective. Having considered the viability of the Complaint under the applicable standard of review, the Court has concluded that Plaintiff fails to state a claim upon which relief could be granted and that the Court lacks jurisdiction to hear the matter. As such, his entire Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

In light of his *pro se* status, the Court would typically, prior to outright dismissal, afford Plaintiff the opportunity to amend his Complaint in order to state cognizable claims. However, upon completing my review of the Complaint, I determine that any such amendment of any federal claims over which the Court would have jurisdiction would be futile in light of the facts presented and the legal obstacles outlined above. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *Davis v. Kushner*, 2014 WL 5308142, at *4 (N.D.N.Y. Oct. 16, 2014) ("[T]he domestic relations exception bars this Court from exercising its jurisdiction over the instant action. Furthermore, granting [Plaintiff] an opportunity to amend his complaint would be futile because from the face of the complaint, the Court lacks subject matter jurisdiction.").

Thus, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5150196

---

### Footnotes

1    The Court therefore takes judicial notice of the Family Court orders and decisions referenced in the Complaint. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice of custody order of the Family Court);

2019 WL 5150196

*Villanueva v. City of New York*, 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court orders and hearing transcripts from the underlying Family Court proceedings....").

2   While the Supreme Court in *Blessing* did not foreclose every section 1983 claim predicated upon Title IV-D, it emphasized that a potential plaintiff must identify a particularized portion of the statute and establish that it did in fact create individually enforceable rights. As an example, the Court highlighted the potential situation where the State did collect support payments but then failed to pass through a portion of the payment to the party entitled to it by § 657(b)(1) of the Act. *Id.* at 345-46.

3   Plaintiff presented this argument by way of an *ex parte* order to show cause motion after a default judgment had already been entered.

4   Plaintiff also makes a state law claim that, under the Family Court Act, a cap of five hundred dollars should have been placed upon any child-support order based upon his financial condition. Compl. at ¶ 56 (citing Family Court Act § 413(1)(g)).

5   If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3759174
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,
v.
Honorable Cecily L. MORRIS, Judge-New York State Family Court for the County of St. Lawrence, Defendant.

8:19-cv-00097 (BKS/DJS)
|
Signed 08/09/2019

**Attorneys and Law Firms**

Plaintiff pro se: Robert G. Bowman, Gouverneur, New York.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 *1  On January 24, 2019, Plaintiff pro se Robert G. Bowman filed this action for declaratory and injunctive relief naming Honorable Cecily L. Morris, a judge in St. Lawrence County Family Court, as a defendant. (Dkt. No. 1). This matter was referred to United States Magistrate Judge Daniel J. Stewart, who, on April 10, 2019, issued a Report-Recommendation recommending, among other things, that the Complaint be dismissed because the Court lacks subject-matter jurisdiction. (Dkt. No. 7). Magistrate Judge Stewart concluded that: the Complaint does not identify a federal statutory right enforceable under 42 U.S.C. § 1983; in any event, under the *Rooker-Feldman* doctrine and the domestic-relations exception to federal subject-matter jurisdiction, this Court does not have jurisdiction to consider Plaintiff's challenge to the St. Lawrence County Family Court orders; and the *Younger* abstention doctrine prevents this Court from interfering with any ongoing proceedings in St. Lawrence County Family Court. (Dkt. 7, at 5-14). Plaintiff has filed an objection to Magistrate Judge Stewart's determination that this Court lacks jurisdiction. (Dkt. No. 9). For the reasons set forth below, the Report-Recommendation of dismissal for lack of subject-matter jurisdiction is adopted and the Complaint is dismissed.

**II. STANDARD OF REVIEW**

This court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012). Findings and recommendations for which there was no properly preserved objection are reviewed for clear error. *Id.*

**III. DISCUSSION**

Plaintiff filed this Complaint "seek[ing] to enforce" 42 U.S.C. § 667(b)(2), which allegedly entitles him to the "opportunity to rebut the presumptive child support award" that Plaintiff was ordered to pay. (Dkt. No. 1, at 1). Plaintiff alleges that § 667(b)(2) "confers a personal right upon the plaintiff that is enforceable under [42 U.S.C.] § 1983. (*Id.*). Plaintiff has identified two orders of the St. Lawrence County Family Court ("Family Court"), filed in 2003 and 2007, that he claims should be modified or vacated. (*Id.* at 3). On March 16, 2016, Plaintiff submitted an application to show cause in Family Court, seeking to "modify, terminate, and vacate those parts of the child support order plaintiff was no longer legally obligated to pay," but Defendant Judge Morris denied his application. (*Id.* at 1–2). Plaintiff filed a motion to reargue and renew, which the Family Court denied, and an appeal to the New York Supreme Court's Appellate Division, Third Department, which was dismissed. (*Id.* at 4–6). *St.*

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 101 of 171
Bowman v. Morris, Not Reported in Fed. Supp. (2019)
2019 WL 3759174

*Lawrence County Support Collection Unit ex rel. Bowman v. Bowman*, 152 A.D. 3d 899, 899–900 (3d Dep't 2017), *appeal dismissed*, 30 N.Y.3d 1032 (2017). [1] In this action Plaintiff seeks, among other things, a declaration that Judge Morris's conduct violates 42 U.S.C. § 667(b)(2) and "plaintiff's right of access to the courts guaranteed by the First Amendment," as well as an injunction restraining Judge Morris from any further violations of § 667(b)(2).

**\*2** In a thorough Report-Recommendation, Magistrate Judge Stewart concluded that § 667(b)(2) does not create a right that is enforceable under § 1983 and that, even if there were an enforceable federal right, under the *Rooker-Feldman* doctrine and the domestic-relations exception to federal subject matter jurisdiction, this Court does not have jurisdiction to consider Plaintiff's claims. Further, Magistrate Judge Stewart determined that, under the *Younger* abstention doctrine, the Court must abstain from exercising jurisdiction to interfere with any ongoing proceedings in Family Court. Magistrate Judge Stewart thus concluded, *inter alia*, that the Court lacks subject-matter jurisdiction and the Complaint should be dismissed.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that the Complaint is insufficient to confer jurisdiction. (Dkt. No. 9). Plaintiff himself describes his Complaint as a challenge to "the Family Courts refusal to allow the plaintiff an opportunity to rebut the presumptive child support award contained in [the 2003, 2007 and 2011] child support orders as is mandated by 42 U.S.C. 667[(b)(2)]." (Dkt. No. 9, at 3). For the reasons explained by Magistrate Judge Stewart, the domestic-relations exception and the *Rooker-Feldman* doctrine divest this Court of jurisdiction to consider that challenge. (Dkt. No. 7, at 11–13). Plaintiff argues that *Rooker-Feldman* does not preclude a § 1983 action, citing *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014). But *Teichmann* does not provide any support for subject-matter jurisdiction here. In *Teichmann*, the Second Circuit affirmed the dismissal of a § 1983 action for failure to state a claim because the defendant prosecutor and other state officials had absolute immunity. Since the plaintiff was seeking to vacate his conviction, the Second Circuit noted that its decision found "additional support in the principle that animates the *Rooker-Feldman* doctrine: namely that federal district courts do not have authority to review the judgments of state courts." *Teichmann*, 769 F.3d at 826. Plaintiff relies on the Court's subsequent statement: that *Rooker-Feldman* "does not preclude a § 1983 action or a hypothetical direct constitutional tort action, against a state official who violates a plaintiff's constitutional rights." *Id.* Indeed, as the Second Circuit later noted, only those § 1983 plaintiffs who "complain of an injury caused by a state judgment" are subject to the *Rooker-Feldman* bar. *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007). Here, because Plaintiff's complaint seeks review and rejection of a state court judgment—i.e., a declaration that Judge Morris's orders violated the First Amendment and § 667(b)(2)—his claims are barred by *Rooker-Feldman*.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that § 667(b)(2) does not provide a personal federal right enforceable under 42 U.S.C. § 1983. But the Court need not consider whether Plaintiff has raised a colorable federal claim under § 1983 for the purposes of subject-matter jurisdiction because, regardless of whether § 667(b)(2) creates a personal right enforceable under § 1983, the *Rooker-Feldman* doctrine and the domestic-relations exception divest this Court of jurisdiction to consider Plaintiff's challenge to Judge Morris's decisions. The Court therefore adopts Magistrate Judge Stewart's recommendation that this action be dismissed for lack of subject-matter jurisdiction.

**IV. CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 7) recommending that this action be dismissed for lack of subject-matter jurisdiction is **ADOPTED**; and it is further

**\*3** **ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice for lack of subject-matter jurisdiction; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**Bowman v. Morris, Not Reported in Fed. Supp. (2019)**

2019 WL 3759174

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3759174

---

**Footnotes**

1      In its recitation of the facts, the Third Department noted that the Family Court "declined to issue the order to show cause, finding that [Plaintiff] failed to file timely written objections to the three [child support] orders ... and, as to the money judgment, [Plaintiff] failed to establish a reasonable excuse for his default." *Bowman*, 152 A.D. 3d at 899.

---

**End of Document**
      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1464346

2024 WL 1464346
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,
v.
Myra MONTAQUE, Defendant.

5:24-cv-0223 (BKS/TWD)
|
Signed April 4, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, pro se, PO Box 7124, Syracuse, NY 13261.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review five submissions filed by *pro se* plaintiff Ellis Davon Dudley, II ("Plaintiff"), as well as a motion to proceed *in forma pauperis* ("IFP"). Dkt. No. 1; Dkt. No. 2. For the reasons stated below, the Court recommends Plaintiff's pleadings be dismissed.

### II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. Dkt. No. 2. Upon review, Plaintiff's IFP application demonstrates economic need. *See id.* Therefore, he is granted permission to proceed IFP.

### III. PLAINTIFF'S SUBMISSIONS

Plaintiff's first submission is a document labeled "NOTICE OF REMOVAL" which purports to remove to this Court "all claims and causes of action in the civil action styled IV-D Support Myra Montaque against Ellis Dudley Jr., File# 31274 Docket# F-06437-22 ... now dismissed in the Onondaga County Family Court .... pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1441, 42 U.S.C. 660." Dkt. No. 1. [1], [2] He next lists fifteen "grounds for removal" which appear to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331. *See id.* at 1-2. The document further states "A copy of all process, pleadings and orders served upon defendants to date in the State Court Attached are all instruments filed under this situation." *Id.* at 2.

Plaintiff's next two submissions appear to contain, *inter alia*, materials related to proceedings between himself and Myra Montaque in Onondaga County Family Court. *See generally*, Dkt. Nos. 1-1, 1-2. The filings contain, but are not limited to: notices and summons to appear; an Order of Support by Default, dated April 11, 2023; findings of fact; notices of motions; orders dismissing petitions to vacate; a notice of appeal; a brief to the Appellate Division, Fourth Department; and transcripts. *See id.*

Plaintiff also submitted a document captioned "CERTIFICATE OF SERVICE BY MAIL." *See* Dkt. No. 1-3 at 1. The document, dated February 14, 2024, indicates Plaintiff served a copy of the "Notice of Removal and Exhibits" on "Myra Montaque" by depositing a copy of the documents in a mailbox. *Id.*

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 104 of 171

Dudley v. Montaque, Not Reported in Fed. Supp. (2024)

2024 WL 1464346

Finally, Plaintiff submitted a "CIVIL COVER SHEET." *See* Dkt. No. 1-4 at 1. He indicated this Court has federal question jurisdiction over the present matter. *Id.* In the nature of suit portion of the sheet, Plaintiff checked the following boxes: Negotiable Instrument, Recovery of Overpayment, Other Contract, Contract Product Liability, Personal Injury - Product Liability, Other Fraud, Commerce, Administrative Procedure Act/Review or Appeal of Agency Decision, and Constitutionality of State Statutes. *Id.* Plaintiff indicated the case was removed from state court, identified "42 U.S.C. 1981" as the statute under which he filed, and listed "Contract Product liability" as a brief description. *Id.* His sole listed demand is for "full Disclosures." *Id.* Finally, Plaintiff listed Docket Number "F-02393-21" as a related case before Judge "Jefferey A Dom." *Id.*

## IV. STANDARD OF REVIEW

**\*2** Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

**\*3** Even affording Plaintiff's filings a liberal construction, his submissions are difficult to decipher and fail to provide sufficient factual information for the Court to review or for the Defendant(s) to have notice of any claims against them. Therefore, the Court recommends this action be dismissed.

As an initial matter, the Court notes Plaintiff has not filed a complaint. While a plaintiff's initial filing(s) need not be titled "complaint," *see, e.g., Muhammad v. Smith*, No. 3:13-CV-0760 (MAD/DEP), 2013 WL 5652495, at *2 (N.D.N.Y. Oct. 16, 2013) (construing the plaintiff's initial filings as a complaint), *report and recommendation adopted in part, rejected in part*, 2014 WL 3670609 (N.D.N.Y. July 23, 2014), here, the Plaintiff's submissions lack any document which comports with the Federal Rules' pleading requirements.

Under Rule 8, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (citing *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (emphasis omitted). Here, the Plaintiff's filings are entirely devoid of a statement of any claim against Montaque.

Furthermore, Plaintiff's submissions lack factual allegations against Montaque. From what the Court can glean, Plaintiff's contentions arise from a petition to vacate an Order of Support by Default, issued by Onondaga County Family Court, which was itself dismissed by that Court prior to the commencement of this action. *See* Dkt. No. 1 at 1; Dkt. No. 1-1 at 1, 3. While Dkt. No. 1 references a multitude of federal statutes, none of Plaintiff's statements constitute allegations *against Montaque.* Indeed, the Defendant's name appears only in the document's caption. Accordingly, dismissal of any "claim" against Montaque is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See, e.g., Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual allegations that he has not pled."); *Drawhorne v. Aloise*, No. 6:23-CV-1278 (TJM/TWD), 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (dismissing the plaintiff's claims against an individual where the plaintiff listed the individual "as a defendant in the caption of his complaint but fails to assert any allegations against him or her."), *report and recommendation adopted*, 2024 WL 532572 (N.D.N.Y. Feb. 8, 2024); *Joseph v. Annucci*, 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption only" where "[t]he body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner.").

In any event, it is likely any claim based on these facts would be barred. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Id.* (citing *Sims v. Kaufman*, No. 1:23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, No. 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine. *See, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023). [3]

**\*4** Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also, e.g., Oliver v. Punter*, No. 2:22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce, alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted). Accordingly,

2024 WL 1464346

this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support. *See Rotondo v. New York*, No. 5:17-CV-1065 (GLS/DEP), 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017); *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Although this Court has serious doubts, it is not clear whether Plaintiff could assert a cognizable cause of action against Defendant by way of a better pleading. Therefore, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed with leave to amend. If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted, which Plaintiff has a legal right to pursue, and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION
**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[4] and it is

**RECOMMENDED** that Plaintiff's claims be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1464346

---

### Footnotes

1       Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Case 5:25-cv-00974-AJB-ML   Document 8   Filed 05/13/26   Page 107 of 171

Dudley v. Montaque, Not Reported in Fed. Supp. (2024)

2024 WL 1464346

2    This matter was directly assigned to this Court by text order, *see* Dkt. No. 4, as deemed related to *Dudley v. Burgos et al.*, No. 5:24-CV-0223 (BKS/TWD), another action commenced by Plaintiff and assigned to this Court. The Court also takes judicial notice of a third action currently pending in this district, *Dudley v. Hochul et al.*, No. 5:24-CV-0048 (DNH/ML), which Plaintiff commenced by filing a complaint on January 11, 2024.

3    Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/ TWD), 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, No. 2:19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing]' a State's interest in enforcing the orders and judgments of its courts.') (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

4    Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

5    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 108 of 171

2022 WL 3228272

2022 WL 3228272
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Albert OLIVER, Plaintiff,

v.

Ayesha PUNTER, Meridith Lafler, Support Magistrate; Harmon Lutzer,
Attorney; Steve Bellone, Suffolk County Executive; SCCSEB, Defendants.

22-CV-3580(GRB)(LGD)
|
Signed August 10, 2022

**Attorneys and Law Firms**

Albert Oliver, Huntington Sta., NY, Pro Se.

## ORDER

GARY R. BROWN, United States District Judge:

 **\*1**  On June 16, 2022, *pro se* plaintiff Albert Oliver ("plaintiff") filed a complaint in this Court against Ayesha Punter ("Punter"), Meridith Lafler ("Lafler"), Harmon Lutzer ("Lutzer"), Suffolk County Executive "Steve Bellone" ("Bellone"), and "SCCSEB"[1] (collectively, "defendants") using the Court's form for civil rights actions brought pursuant to 42 U.S.C. § 1983. *See* Docket Entry "DE" 1. Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") together with the complaint. DE 2.

Upon review, the Court finds that plaintiff is qualified by his financial status to commence this action without prepayment of the filing fee. Accordingly, plaintiff's application to proceed IFP is granted. However, for the reasons that follow, the complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. §§ 1915(e)(2)(B).

## BACKGROUND

### 1. Summary of the Complaint[2]

*Pro se* plaintiff's brief submission seeks to challenge an underlying state court child support proceeding. According to the complaint, at the Family Court building located in Central Islip, New York:

> On April 26, 2022 both Support Magistrate Meridith Lafler and Attorney Harmon Lutzer held a support hearing without following the rules of Due Process. On May 25, 2022, Support Magistrate Meridith Lafler disregarded Due Process by not following the rules of Due Process.

DE 1 at 5, ¶ III. Although plaintiff left the space on the form complaint that calls for a description of any injuries suffered as a result of the challenged conduct blank, he seeks to recover a monetary damages award in the sum of $240,222.00 as well as an

Case 5:25-cv-00974-AJB-ML Document 8 Filed 05/13/26 Page 109 of 171

Oliver v. Punter, Not Reported in Fed. Supp. (2022)
2022 WL 3228272

order terminating any debts or arrears owed and the return of funds he already paid together with 6% interest. *Id.* at 6, ¶¶ IV-V. Plaintiff also requests that the defendants "[l]eave me alone from this forthwith." *Id.* at ¶ V.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether plaintiff qualifies for *in forma pauperis* status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### 1. *In Forma Pauperis*

Upon review of the IFP application, the Court finds that plaintiff is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the application to proceed IFP (DE 2) is granted.

### 2. Sufficiency of the Pleadings

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

> **\*2** It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them " 'to raise the strongest arguments that [they] suggest [ ].' " *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, ––– U.S. ––––, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

> Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 110 of 171

Oliver v. Punter, Not Reported in Fed. Supp. (2022)
2022 WL 3228272

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id.* The Court analyzes plaintiff's Section 1983 claims below.

### I. Lack of State Action

"[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Although plaintiff names Punter and Lutzer as defendants, he has not alleged that either defendant is a state actor or has otherwise acted under color of state law. *See* DE 1, *in toto.* Accordingly, plaintiff has not plausibly alleged a Section 1983 claim against Punter and Lutzer and these claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### II. Lack of Personal Involvement

**\*3** Plaintiff's sparse complaint does not include any factual allegations of conduct or inaction attributable to any of the defendants. Indeed, apart from the caption and "Parties" section of the complaint, Punter, Bellone, and SCCSEB are not again mentioned. *See* DE 1, *in toto.* Moreover, plaintiff has alleged only that Lafler and Lutzer "held a Support Hearing without following the rules of Due Process." *Id.* at 5, ¶ III.C.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Rather, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Here, as is readily apparent, Plaintiff has omitted any factual allegations of conduct or inaction attributable to any defendant and his "bald assertions and conclusions of law" do not suffice. Thus, in the absence of any alleged personal involvement by any defendant, plaintiff has not set forth a plausible Section 1983 claim against them. Thus, plaintiff's Section 1983 claims are not plausible and are thus dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### III. The Domestic Relations Exception

Even if Plaintiff had alleged the personal involvement of each defendant, this Court could not adjudicate his claims challenging an underlying state court child support proceeding. The domestic relations exception to federal jurisdiction " 'divests the federal

2022 WL 3228272

courts of power to issue divorce, alimony and child custody decrees.' " *Stumpf v. Maywalt*, No. 21-CV-06248(EAW), 2022 WL 2062613, at *4 (W.D.N.Y. June 6, 2022) (quoting *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (citation omitted)). This exception also extends to child support determinations and the enforcement thereof. *See*, *e.g.*, *Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau*, 07-CV-03755(JFB)(AKT), 2009 WL 580426, at *6-7 (E.D.N.Y. Mar. 5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment"); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (plaintiff's constitutional claims, which were directly related to an underlying child support determination, were barred by the domestic relations exception because "to decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is the role of the Appellate Division ... not the role of this Court."). Thus, the domestic relations exception divests the Court of subject matter jurisdiction to adjudicate plaintiff's Section 1983 claims. Accordingly, they are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

### IV. Leave to Amend

**\*4** The Second Circuit has held that "[d]istrict courts should generally not dismiss a *pro se* complaint without permitting at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate. *Rahim v. Secretary, Establishment Div., Gov't of People's Republic of Bangl.*, 481 F. App'x 18, 19 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's complaint without leave to amend where complaint was dismissed for lack of subject matter jurisdiction).

Here, leave to amend would be futile given that the domestic relations exception divests this Court of subject matter jurisdiction. Accordingly, leave to amend the complaint is denied.

### CONCLUSION

Based on the foregoing, plaintiff's application to proceed IFP is granted. The complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Leave to further amend the complaint is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3228272

---

### Footnotes

1    The Court understands this to reference the Suffolk County Child Support Enforcement Bureau.

2    Excerpts from the complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 112 of 171

3    It also appears that plaintiff is challenging state court judgments rendered in April and May 2022, well before the complaint was filed in this Court on June 16, 2022. Thus, the *Rooker-Feldman* doctrine would also require this Court to decline plaintiff's invitation to review and reject those state court judgments. *Stumpf*, 2022 WL 2062613, at 4 n. 4 ("The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (internal quotation marks omitted)); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2017 WL 5201738

2017 WL 5201738
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,
v.
The State of NEW YORK, Defendant.

Civil Action No. 5:17-CV-1065 (GLS/DEP)
|
Signed 10/31/2017

**Attorneys and Law Firms**

MICHAEL JOSEPH ROTONDO, 408 Weatheridge Dr., Camillus, NY 13031, Pro se.

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

 **\*1**  This is a civil rights action brought by *pro se* plaintiff Michael Joseph Rotondo against the State of New York pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that during the course of proceedings in New York State court, he was denied due process.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for review. Based upon my review of those materials, I conclude that plaintiff qualifies for leave to proceed without prepayment of fees, and therefore will grant his IFP application. I further find, however, that plaintiff's claims in this action are precluded by the *Rooker-Feldman*[1] doctrine and the domestic relations exception to this court's jurisdiction.

I. BACKGROUND
Plaintiff commenced this action on September 25, 2017. Dkt. No. 1. Named as the sole defendant in the action is the State of New York. *Id.* at 1. Plaintiff claims that throughout the course of proceedings in the New York State Supreme Court Appellate Division, Fourth Judicial Department, he was denied due process when (1) Associate Justice Edward D. Carni declined to issue an order to show cause applied for by plaintiff to stay a support order entered in Onondaga County Family Court, and (2) the court dismissed his appeal from lower court proceedings and denied a motion by plaintiff for a transfer of venue. *Id.* at 3, 5. *See also* Dkt. No. 1 at 8-11. In his three causes of action plaintiff claims that he was denied due process, as guaranteed under the Fourteenth Amendment to the United States Constitution, by Judges Edward D. Carni, John V. Centra, Patrick H. NeMoyer, Shirley Troutman, Joanne M. Winslow, Henry J. Scudder, Gerald J. Whalen, Nancy E. Smith, Erin M. Peradotto, Stephen K. Lindley, and John M. Curran.[2] *Id.* at 5.

Plaintiff's complaint is accompanied by an application for leave to proceed without prepayment of fees or costs. Dkt. No. 2. That application sets forth the necessary financial information concerning plaintiff's income and expenses to permit the court to determine whether he qualifies for IFP status.

II. DISCUSSION

2017 WL 5201738

A. IFP Application

**\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed without prepayment of fees is granted. [4]

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2. Analysis

Federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte* at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte.*" (quotation marks and alterations omitted)). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, two legal doctrines implicating this court's jurisdiction require dismissal of plaintiff's complaint—the domestic-relations exception and *Rooker-Feldman* doctrine. I will address each separately below.

a. Domestic-Relations Exception

Because plaintiff's claims, brought under 42 U.S.C. § 1983, are couched in terms of constitutional deprivations, the court would ordinarily possess subject matter jurisdiction over them. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' "[5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

 **\*4** The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

In this case, it is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court. Dkt. No. 1 at 3, 6. In order to adjudicate plaintiff's claims, this court would be forced to examine the family court and Appellate Division decisions, and the evidence upon which those decisions were rendered, in the domestic relations proceedings. Because the court lacks jurisdiction over plaintiff's claims, I recommend the complaint be dismissed. *See, e.g., Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at \*4-5 (E.D.N.Y. June 8, 2015) (relying on the domestic-relations exception to federal court jurisdiction when dismissing the plaintiff's claims that challenged the state courts' determinations concerning his child support obligations).

b. *Rooker-Feldman*

Plaintiff's claims are also precluded by the *Rooker-Feldman* doctrine, which recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff

Rotondo v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 5201738

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 116 of 171

invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

**\*5**  The four elements required for the application of the *Rooker-Feldman* doctrine are clearly satisfied in this case. In his complaint, plaintiff effectively asks this court to assume appellate jurisdiction over matters pending in a New York State family court and the Appellate Division. Dkt. No. 1 at 3, 6. Because plaintiff's claims are precluded on this separate and independent basis, as well, I recommend their dismissal.

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

### III. SUMMARY AND RECOMMENDATION

Because plaintiff's IFP application demonstrates that he qualifies for leave to proceed without prepayment of fees or costs, that application is granted.

Turning to the merits of plaintiff's claims, I conclude that they are precluded by both the domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine, and that plaintiff would be unable to overcome these deficiencies by better pleading. Accordingly, it is hereby

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 117 of 171

Rotondo v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 5201738

ORDERED that plaintiff's application for leave to proceed without prepayment of cost and fees (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without leave to amend; and it is further

RECOMMENDED that plaintiff's letter requesting the court expedite review of this matter (Dkt. No. 4) be DENIED as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

 **\*6**  The clerk of the court is respectfully directed to serve a copy of this report, recommendation, and order on plaintiff in accordance with the local rules of practice for this court.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5201738

---

**Footnotes**

1    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

2    As was previously indicated, the sole named defendant in this case is the State of New York. In the event that plaintiff intended to name the judges identified in his causes of action as defendants, his claims against them would be precluded. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

**Rotondo v. New York, Not Reported in Fed. Supp. (2017)**
2017 WL 5201738

6    If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5198194

2017 WL 5198194
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

5:17-cv-1065 (GLS/DEP)
|
Signed 11/09/2017

**Attorneys and Law Firms**

FOR PLAINTIFF: Michael Joseph Rotondo, 408 Weatheridge Dr. Camillus, NY 13031, pro se.

## ORDER

Gary L. Sharpe, U.S. District Judge

 **\*1**  The above-captioned matter comes to this court following an Order, Report, and Recommendation (R&R) by Magistrate Judge David E. Peebles, duly filed on October 31, 2017. (Dkt. No. 5.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

Plaintiff *pro se* Michael Joseph Rotondo has filed a document labeled "Objections to the Report-Recommendation," which consists of a single sentence wherein he summarily "respectfully reasserts the merit of his allegations." (Dkt. No. 6.) Because Rotondo's objections are general and conclusory, the court will review the R&R for clear error only. *See Almonte v. N.Y.S. Div. of Parole*, No. Civ. 904CV484, 2006 WL 149049, at \*5-\*6 (N.D.N.Y. Jan. 18, 2006). After careful consideration, the court finds no clear error and adopts the R&R in its entirety.

Accordingly, it is hereby

**ORDERED** that the Order, Report, and Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Rotondo's complaint (Dkt. No. 1) is **DISMISSED** without leave to amend; and it is further

**ORDERED** that Rotonodo's letter motion seeking to expedite review of this matter (Dkt. No. 4) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5198194

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 6021838

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 120 of 171

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)

|

Signed 10/26/2017

|

Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.) The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court [1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

### I. BACKGROUND

#### A. Plaintiff's Original Filings

On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b). [2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3. [3])

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers. [4]

2017 WL 6021838

**\*2** In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5] (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

### B. Stay Order

In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6] (Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

### C. Plaintiff's Failure to Comply with the Court's Stay Order

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles, [7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** 28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

2017 WL 6021838

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4** On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant of 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket#v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant of 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS, Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

### A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

**\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

### B. Removal

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 124 of 171

2017 WL 6021838

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6** 28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

### 1. No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F.Supp. 939, 940 (E.D. La. 1969) (there must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

### 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443. [8] In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

**\*7** Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or quasi-

2017 WL 6021838

officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers." [9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at *3 (D. Conn. Oct. 29, 2015) [10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

### 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims); *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e). *See, e.g.*, *Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception. [11]

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

### C. Habeas Corpus Petition

Plaintiff has filed his writ for a petition for habeas corpus under 18 U.S.C. §§ 242, 1512 (b)(3), and 1513(b). All three are criminal statutes. Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or

2017 WL 6021838

a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody. *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

## IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

### A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals—landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD—Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human Resources at Anne Arundel CSCU, City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

**\*9** (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

> Brian J. Doliver, Second Ward Alderman; Detective John Fern; Sheila J. Poole, Acting Commissioner NYS Central Register OFCS; Sarah Simon, Regional Director of Child Welfare Services; Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth Beers, and CPS Patricia Luca, Chenango County DSS; Sarah Fitzpatrick, Esq., Chenango County DSS; Irene A. Flores, Esq.; DCMOBOCES Board of

2017 WL 6021838

> Education Superintendent Doreen Rowe, Deputy Superintendent Kim Corcoran, District School Lunch Director, Connie Bambino, Asst. District School Lunch Director, Pam Rowe, School Lunch Cook; City of Norwich Fire Department, Terry Kuhn; Johanna Kuhn, City of Norwich Police Department; Chief Joseph Angelino; Sergeant John Doe; Norwich Central School District Board of Education President Joseph McBride, Vice-President Tom Sutton, and member Howie Sullivan; Gerrard O'Sullivan Superintendent; Karrie Stainbauer Director of Special Education; Nicole A. Cruz, Special Education Teacher; Christine Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr. Alfred Barnes; Unadilla Valley Central School District Board of Education President Kristen Romavicz, Vice-President Mark Davis, Vicky Gregory, Kim Murray, and Robert Mackey; Superintendent Mike Brown; Business Official Frank Johnson; Building Principal Chris Harper; Elementary Principal Sherri Houck; Elementary School Counselor; Chris Wilkinson, Labor Negotiations; and Mike Lyn, Regional President.

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include Cortland County Sheriff's Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland County Family Court Clerks; and four John Doe officers. *Id.* at 6.

### B. Factual Allegations in the Complaint

The factual allegations in Plaintiff's complaint and his claims for relief arise in substantial part out of the child support, custody, and visitation disputes between the Plaintiff and Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also made to both Nicole Cruz and the Plaintiff having been made the subject of reports of child abuse or maltreatment received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

### 1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id.* at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id.* at 19.

**\*10** The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id.* at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id.* From December 2012 to the present, Nicole Cruz had three indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

2017 WL 6021838

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

**\*11** Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and denied

2017 WL 6021838

Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

#### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

#### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.*, transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

#### 6. Sheila Poole, Acting Commissioner of OCFS

2017 WL 6021838

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

### 7. Chenango County Department of Social Services

**\*12**  It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

### 8. Cortland County Department of Social Services, Commissioner Kristen Monroe, and Director of Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No. 1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.*, thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

### 9. DCMO BOCES and Unadilla Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

was subjected to involuntary servitude and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

### 10. Conspiracy

**\*13** Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee. Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1st, 2nd, 4th, 5th, 6th 8th, 9th, 10th, 13th (sec. 1) and 14th (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse. [12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

### V. MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint, and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws. [13] *Id.* at 3.

## VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and Judgement RULE 72 Pretrial Order." [14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S. Code § 242 Deprivation of rights under color of law, and 18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017, "Actio Contrcto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!! [,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: 18 U.S.Code § 1201 Kidnaping, 18 U.S. Code 242 Deprivation of rights under color of law, 18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!! [,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

2017 WL 6021838

**\*15** Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

## VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A. Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, —— U.S. ——, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming

2017 WL 6021838

that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. [16] *Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### B. Personal Involvement Requirement of § 1983

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at \*5 (E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at \*5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at \*2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County, Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers. [17]

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

### C. Eleventh Amendment Immunity

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court. [18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

 **\*18**  It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id.* at 13, 112 S.Ct. 286 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

> 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

### F. Chenango and Cortland Counties

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments. *See Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

#### 1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§ 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, it if did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are

2017 WL 6021838

not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY,* No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

### 2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983. *See Pangburn,* 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor.[19] *Id.* at 11-12.

**\*20** Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See Cornejo,* 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See Dwares*, 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

### H. Attorney Defendants Williams, Taylor, and Fertig

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their position. *Harrison v. New York*, 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See Dwares*, 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21**  Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Cornejo,* 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice. [20]

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia*, that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into

2017 WL 6021838

involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.*, 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark*, No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at *5 (S.D.N.Y. Feb. 3. 2017). Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22** Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question. [21] Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L. Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception. [22]

### M. Plaintiff's Motion to Amend

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 140 of 171

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios,* 2008 WL 150209, at *2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23**  Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See Giano v. Martino*, 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd*, 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction. [23]

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

### N. Motion for a TRO and a Preliminary Injunction

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2) (B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

---

**Footnotes**

1    Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

2    Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

3    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

4    Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

5    The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

6    The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.) Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

7    Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

8    Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. *See* 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. *See Flood v. CSX Transp., Inc.,* No. 11-CV-162S (WMS), 2012 WL 464189,

Case 5:25-cv-00974-AJB-ML    Document 8    Filed 05/13/26    Page 142 of 171

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

9     In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

10    Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

11    The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

12    There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

13    In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

14    The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

15    A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

16    Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

17    The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

18    While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares*, 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.*, 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at *1 (2d Cir. Oct. 5, 2017.)

The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6001833

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,
v.
The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)
|
Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1**  On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

2017 WL 6001833

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

 **\*2**  **ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

 **\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

1997 WL 599355

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are

1997 WL 599355

wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

## CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

## ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

## BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

1997 WL 599355

he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

1997 WL 599355

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Case 5:25-cv-00974-AJB-ML   Document 8   Filed 05/13/26   Page 151 of 171

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7**  Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:25-cv-00974-AJB-ML Document 8 Filed 05/13/26 Page 152 of 171

1997 WL 599355

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1     I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1371366

2010 WL 1371366
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William O'BRIEN, Plaintiff,

v.

David A. HANSELL, in his Capacity as the Commissioner of the New York State
Office of Temporary and Disability Assistance, and Robert Doar, in his Capacity as the
Commissioner of The New York City Human Resources Administration, Defendants.

No. 09–CV–629 (RRM)(JO).
|
March 31, 2010.

**Attorneys and Law Firms**

Edward J. Josephson, Johnson M. Tyler, South Brooklyn Legal Services Corp., John C. Gray, Brooklyn Legal Services, Brooklyn, NY, for Plaintiff.

Garvin V. Smith, Vincent Leong, Attorney General State of New York, Michael Anthony Suarez, Toni Lynn Gantz, New York City Law Department, New York, NY, for Defendants.

### *MEMORANDUM & ORDER*

MAUSKOPF, District Judge.

**\*1** Plaintiff William O'Brien brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief for alleged violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and, pursuant to this Court's supplemental jurisdiction, for violations of the Due Process Clause of Article 1, § 6 of the New York State Constitution, Section 413(1) of the New York Family Court Act, and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347(9)(e)(2). Defendants move to dismiss the Complaint and for judgment on the pleadings for, *inter alia,* failure to state a claim. For the reasons set forth below, the Court grants the Defendants' motions, and Plaintiff's Complaint is dismissed.

### *BACKGROUND*

Plaintiff, 52, is a resident of Brooklyn, and a child support obligor/debtor with emancipated children who owes arrears of approximately $50,000. Defendant David A. Hansell, Commissioner of the New York State Office of Temporary and Disability Assistance (the "OTDA"), is responsible for the supervision of enforcement of child support obligations via the New York State Office of Child Support Enforcement, a bureau within the OTDA. Defendant Robert Doar, Commissioner of the New York City Human Resources Administration (the "HRA"), is responsible for the supervision of child support obligations within New York City.

Plaintiff is a Social Security recipient with monthly payments of $739 in 2008 and $787 at the time he filed his Complaint. Plaintiff and his wife had three children between 1977 and 1981, but Plaintiff's marriage ended sometime prior to 1993, when Plaintiff was ordered to pay child support in the amount of $267 every two weeks. In May 1997, Plaintiff sought a downward

2010 WL 1371366

modification in the amount of his payments due to his unemployment. While that petition was pending, he was struck by a car and severely injured, going into a coma. Although Plaintiff emerged from the coma, he claims to suffer from severe signs and symptoms of traumatic brain injury, which causes him great difficulty in organizing his thoughts, remaining focused, picking up social cues, following instructions, and controlling his emotions. Following his injury, Plaintiff became homeless for a number of years starting about 1998.

As a result of his injuries, Plaintiff failed to appear at the downward modification hearing scheduled after his initial petition, but the family court magistrate nevertheless modified the child support order on March 31, 1998 to $100 every two weeks. In June 2002, Plaintiff petitioned the Family court to terminate his child support obligations because his children were all adults. That motion was granted on December 12, 2002, but Plaintiff still owed significant arrears on his child support payments. With counsel, Plaintiff filed another petition for a downward modification retroactive to 1997 on the grounds that his income was below the self-support reserve [1] from 1997 onward, and that his injuries had prevented him from seeking a downward modification prior to June 2002. On June 13, 2003, the family court magistrate hearing Plaintiff's petition issued a "finding of fact" that Plaintiff, as of January 1, 2002, lived below the self-support reserve, but that there was insufficient evidence to show that he was incapable of filing a petition for a downward modification prior to June 2002. Accordingly, an order was entered on August 29, 2003 terminating Plaintiff's child support obligations, but fixing his arrears at $48,937, to be paid in a manner "to be determined by the Support Collection Unit." (Compl.(Doc. No. 1) ¶ 52.)

 **\*2** Plaintiff's monthly Social Security payment is electronically deposited into his Dime Savings Bank account on the third of each month. Plaintiff uses this money to pay for rent, food, and other necessities, usually spending the entire amount each month. On April 3, 2008, Plaintiff received a Social Security payment of $739. On April 11, 2008, Plaintiff's bank account, with a balance of $2.38, was restrained by the Defendants. On April 21, 2008, Plaintiff received a "Notice to Judgment Debtor/ Obligor of Restraining Notice," dated April 11, 2008. The notice advised Plaintiff that money or property of his might have been restrained to satisfy child support arrears. It advised him that unless he filed a written objection within fifteen days, an execution notice would be issued to take the restrained money or property. The notice provided that "YOU MAY ASSERT A MISTAKE OF FACT IF YOU THINK YOU DO NOT OWE THE ARREARS OR YOU MAY CLAIM THAT YOUR MONEY OR PROPERTY SHOULD NOT BE USED TO SATISFY ANY ARREARS BECAUSE IT IS EXEMPT (see below for more information.)" (*Id.* ¶ 63.) The notice explained that "the following types of money or property are always exempt from the payment of ... child support arrears: 1. Supplemental Security Income ("SSI"); 2. Public assistance (welfare); and 3. Alimony or child support." (*Id.* ¶ 64.)

On April 28, 2008, Plaintiff contacted South Brooklyn Legal Services ("SBLS") for assistance in responding to the notice of restraint. On May 3, 2008, Plaintiff's next monthly Social Security payment was electronically deposited into his bank account, which was still frozen. On May 5, 2008, an SBLS attorney (counsel for Plaintiff in this case) faxed a letter with supporting documents to the New York City Office of Child Support Enforcement requesting that Plaintiff's account be released from restraint because Plaintiff lived below the self-support reserve, and that his only income, Social Security, was regularly deposited into his bank account. Plaintiff alleges that at the time this request was made he was distressed by his lack of money, and had to seek assistance from friends and acquaintances to survive. On or about May 9, 2008, approximately twenty-eight days after the initial restraint, Plaintiff's account was released and Plaintiff regained access to his account.

On or about October 10, 2008, Plaintiff's account, with a balance of $0.19, was restrained for a second time by the Defendants. On October 22, 2008, Plaintiff received a notice of restraint identical to the one he had earlier received in April 2008. On October 24, 2008, Plaintiff again contact SBLS for assistance, and on October 30, 2008, SBLS faxed a similar letter to that sent previously to the New York City Office of Child Support Enforcement asking them to release the account. Plaintiff's account was released on November 3, 2008, approximately thirteen days after it had been restrained. Plaintiff alleges that he is fearful that his account will be restrained again. He also alleges that he lives in poverty, and that even when his account is not restrained, he needs to go to food pan tries and soup kitchens for food.

O'Brien v. Hansell, Not Reported in F.Supp.2d (2010)

2010 WL 1371366

**\*3** Plaintiff filed his Complaint in this Court on February 13, 2009, alleging that Defendants violated his due process rights under the United States and New York Constitutions by restraining his bank account in an attempt to collect arrears owed by Plaintiff on his child support payments without advising him that the income in his account, which derived solely from recurring Social Security payments, might be exempt from collection pursuant to the self-support reserve exemption. Plaintiff also argues that Defendants violated his due process rights, Section 413(1) of the New York Family Court Act, and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e) (2) by restraining his bank account a first time in April 2008 without having first obtained evidence refuting or at least bringing into question the validity of the 2003 Family Court finding that Plaintiff was living below the selfsupport reserve, and violated the same provisions in restraining his bank account a second time in October 2008 without determining that his income or assets were above the self-support reserve.

Plaintiff seeks a declaration that the Notice to Judgment Debtor/Obligor of Restraining Notice authored by the OTDA and issued by the HRA is unconstitutional because it violates his due process rights under the United States and New York Constitutions, and that the Defendants' practice of restraining Plaintiff's bank account without regard to previous findings that he lives below the self-support reserve is unconstitutional and also violates Section 413(1) of the New York Family Court Act and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e)(2). Plaintiff also seeks to enjoin Defendants to implement procedures to ensure that a child support obligor/debtor with emancipated children receives notice of his right to seek the release of a restrained account when he lives below the self-support reserve. Plaintiff also seeks to enjoin the Defendants to implement procedures preventing them from restraining his bank account unless they first obtain evidence suggesting that he has income above the self-support reserve. Finally, Plaintiff seeks to recover actual damages resulting from Defendants' restraint of his account.

Defendants now move separately to dismiss Plaintiff's Complaint and/or for judgment on the pleadings. Defendant Hansell moves to dismiss, arguing that the Complaint fails to state a claim against him, that the Eleventh Amendment to the United States Constitution bars any claim for damages or for past violations of federal law, and finally that, in any case, New York law does not impose a self-support reserve limitation on restraining notices and executions to enforce child support obligations, and thus Plaintiff's claims founded on the existence of such a limitation are without merit. Defendant Doar moves for judgment on the pleadings, arguing that Plaintiff lacks standing to bring his Complaint, that Plaintiff fails to state a claim because the HRA is authorized by statute to restrain Plaintiff's bank account under the circumstances of this case and using the notice at issue, and that Defendant Doar, in any case, was not personally involved in the restraint of Plaintiff's bank account.

### *LEGAL STANDARDS*

### I. Standards Applicable to Motions To Dismiss and for Judgment on the Pleadings

**\*4** Defendants move to dismiss Plaintiff's Complaint under both Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c). However, in deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475–76 (2d Cir.2009).

In deciding a Rule 12(b)(6) motion, a complaint should be dismissed only if it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

2010 WL 1371366

" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

## II. Statutory and Regulatory Framework Governing Child Support Obligations

A non-custodial parent has an obligation to support his or her child, and, "if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may determine." N.Y. Fam. Ct. Act § 413(1)(a). Federal law requires that states wishing to receive federal welfare funds establish administrative agencies to, *inter alia,* enforce child support debts. 42 U.S.C. § 654.

In New York, the New York State Office of Temporary and Disability Assistance, Division of Child Support Enforcement, supervises the child support enforcement program in the State. N.Y Soc. Servs. Law § 111–b(1). Each local social services district, through a Support Collection Unit ("SCU"), is required to take all steps necessary to establish, collect, and enforce child support orders. *Id.* §§ 111–c, 111–h. In New York City, the Office of Child Support Enforcement, part of the HRA, is the SCU that enforces child support orders entered in the five counties that constitute the City of New York.

**\*5** Once a child support order has been entered, the local SCU establishes an account for the named child support debtor, the terms of which are established by the order of support. *Id.* § 111–h(1). Any past due support is treated as a judgment by operation of law, 42 U.S.C. § 666(a)(9)(A), and is enforceable in the same manner as a judgment, N.Y. C.P.L.R. 5101. The SCU has various methods of enforcing child support arrears, including, *inter alia,* (1) the issuance of income executions for child support enforcement, see 42 U.S.C. § 666(a)(1), (8), (b); N.Y. C.P.L.R. 5241, and (2) the imposition of child support liens against real and personal property and seizure of assets, bank accounts, and insurance settlements, see 42 U.S.C. §§ 666(a)(4), (c)(1)(G); N.Y. Soc. Servs. Law §§ 111–t, 111–u; N.Y. C.P.L.R. 5222.

In attempting to collect child support arrears under either of the two methods noted, certain limits are placed on the SCU. For example, welfare and Supplemental Security Income cannot be garnished for arrears, see N.Y. Fam. Ct. Act §§ 413(1)(a)(5) (vii) (e), (f); likewise, money will not be taken from a bank account via a property execution if the money in the account derives from welfare, SSI, or child-support payments. N.Y. C.RL.R. 5205(c), (d). Additionally, New York recognizes a self-support reserve whereby the SCU must reduce the amount of additional child support it attempts to collect from a child support arrears debtor via income execution, over and above current child support due, if collection of that additional amount would reduce the debtor's remaining income below the self-support reserve.[2] N.Y.Code, Rules, & Regs. Tit. 18, § 347.9(e)(2). The statutes and regulations governing property execution, however, do not contain any similar reference to the self-support reserve. *Cf. id.* § 346.11 (limiting debtor's defense to mistake of fact); N.Y. C.P.L.R. 5222(k) (clarifying that certain restrictions on property execution do not apply when the debt enforced is for child support arrears); *see also infra,* Discussion, Part II.

## *DISCUSSION*

## I. Plaintiff Has Standing To Assert His Claims

Defendant Doar asserts that Plaintiff lacks standing to bring this action in federal court. As it is axiomatic that federal courts may only decide cases in which the plaintiff establishes an actual case or controversy, this Court must first satisfy itself that Plaintiff has standing. *See Lujan v. Defenders of Wild Life,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy Article Ill's standing requirements, a plaintiff must show (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendants; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

**\*6** As noted by Plaintiff, "Injury in fact is a low threshold, which [the Second Circuit] ha[s] held 'need not be capable of sustaining a valid cause of action,' but 'may simply be the fear or anxiety of future harm.' " *Ross v. Bank of Am., N.A.,* 524

F.3d 217, 222 (2d Cir.2008) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir.2006)). Here, Plaintiff alleges that he was deprived of his property for a total of forty-one days, and that during that time he had to seek loans and charity in order to survive. He also was forced to contact an attorney in order to have his account unfrozen on two occasions. And, while Doar minimizes the amount of money held in the frozen account, the facts alleged in the complaint, taken as true for the purposes of deciding these motions, establish that Plaintiff was deprived of his entire Social Security payment of $739 for five days in April 2008. Even the taking of small amounts of property can satisfy the injury in fact test. *See, e.g., Wash. Legal Found. v. Legal Found., of Wash.,* 271 F.3d 835, 848–50 (9th Cir.2001) (holding that plaintiff who suffered the loss of a small amount of escrow interest had standing to assert Fifth Amendment takings claim), *aff'd,* 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). Moreover, Plaintiff alleges that he suffered additional injuries because he could not access his account, including the need to borrow money to pay for food, and fear and anxiety arising out of his inability to access his sole source of income. Accordingly, Plaintiff has met the first part of the standing test. Because Doar does not challenge Plaintiff's ability to meet the other elements of the standing requirement, and because this Court finds that Plaintiff has established both causation and redressability, Plaintiff has standing to bring this Complaint. However, for the reasons below, Plaintiff's claims fail.

**II. Plaintiff Fails To State A Claim Because New York State Law Does Not Impose A Self–Support Reserve Limitation on Restraining Notices and Executions To Enforce Child Support Obligations**

Plaintiff grounds all of his claims on the erroneous assertion that the self-support reserve applicable to income garnishment must also apply to property restraint and execution. Plaintiff bases his argument on an overly-broad reading of U.S. Supreme Court cases holding that exemption statutes should be "liberally construed," *Porter v. Aetna Cas. & Surety Co.,* 370 U.S. 159, 161, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1963), and that "technicalities" in the functioning of the banking system should not defeat the purpose of the exemption statutes, *id.* (*See* Pls.' Mem. (Doc. No. 21) at 13–16 (also citing *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (applying the holding of *Porter* to Social Security benefits)). Defendants correctly distinguish the cases cited by Plaintiff, however, by noting that each dealt with an exemption embodied in federal law that applied comprehensively to certain categories of payments (such as veterans' benefits or social security benefits), and not, as here, to a state law created reserve attempting to generally protect impoverished, non-custodial parents from financial hardship when paying child support.

 *\*7* As discussed above, state and federal law authorize the restraint and seizure of the personal property of child support debtors, including bank accounts, to enforce child support debts. 42 U.S.C. § 666(a)(4), (c)(1)(G)(2); N.Y. C.P.L.R. 5222; N.Y. Soc. Serv. Law § 111–t. The categories of money that are exempt from restraint, execution, or levy for child support enforcement are set forth in the N.Y. Civil Practice Law and Rules ("CPLR"). *See* N .Y. C.P.L.R. 5205 (exempting (1) Supplemental Security Income, (2) public assistance, including employment earnings considered in calculating the public assistance grant, and (3) child support, spousal support, maintenance, or alimony payments). Social Security payments, such as those received by Plaintiff and at issue here, are not exempt from alienation for child support debts. *See* 42 U.S.C. 659(h); N.Y. Soc. Servs. Law § 111–t. Challenges to notices of restraint may only be challenged on the basis of mistake of fact. *See* N.Y. C.P.L.R. 5222(f); N.Y. Comp.Codes R. & Regs. tit. 18, § 346.11(d)(5), (e).

There is no limitation on restraint or seizure of personal property based on the child support obligor's income level, Plaintiff's arguments to the contrary notwithstanding. Plaintiff cites only to the state statute and regulations applicable to income execution as support for his claim that the self support reserve applies to restraining notices. (*See* Pls.' Mem. at 13 (citing N .Y. Fam. Ct. Act § 413(1)(g); N.Y.Code, Rules, & Regs. tit. 18, § 347.9(e)(2)).) Moreover, while Plaintiff argues that the Supreme Court has "twice ruled that the exempt character of statutorily exempt payments is not lost when exempt money is deposited into an account, provided it remains available for daily use and the debtor needs the money for daily expenses," his argument fails because the moneys at issue here never were exempt. (Pls.' Mem. at 14.)

For example, in *Porter,* the exempt character of veterans' benefit payments, which pertained even after they were deposited into a bank account, was not lost simply because of the "technicality" that deposit into a savings and loan account was made by purchase of shares in the savings and loan that could be converted into liquid funds. 370 U.S. at 161–62. The Court's holding turned on its focus in the earlier case of *Trotter v. Tennessee,* 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358 (1933), on whether the

benefit funds "lost the quality of moneys" and were converted into "permanent investments," or whether, instead, the funds were equivalent to moneys and used for the support and maintenance requirements of the debtor. *Porter,* 370 U.S. at 161–62. The Court also relied on its prior jurisprudence regarding the Congressional intent that exemption legislation "should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof," *id.* at 162, to hold that the deposits at issue should remain inviolate. [3]

**\*8** Here, however, as discussed above, both state and federal law allow Social Security payments to be restrained and executed in fulfillment of child support arrears. The only policy identified by Plaintiff to the contrary is a creation of the New York Legislature, and specifically applies only to income executions, and not to restraints of personal property. This distinguishes the instant case from *Porter* and *Philpott,* and argues against accepting Plaintiff's invitation to rewrite the New York child support laws. This is especially so in light of the New York legislature's recent amendment of the CPLR provisions governing property executions to specifically exempt from restraint and execution the first $2,500 of statutorily exempt payments, N.Y C.P.L.R. 5222(h), or the first $1,740 of any moneys in the debtors account, N.Y. C.P.L.R. 5222(i), *except* when "the debt enforced is for child support, spousal support, maintenance or alimony," N.Y. C.P.L.R. 5222(k), in which case the new restrictions do not apply. Given this clear evidence of the Legislature's intent, the Court finds no support for Plaintiff's argument that the self-support reserve should be extended to protect from restraint and execution Social Security payments deposited into a child support debtor's bank account. Accordingly, Plaintiff's claims must be dismissed.

### CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motions to dismiss and for judgment on the pleadings are GRANTED in full, and the Complaint is DISMISSED. [4]

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1371366

---

**Footnotes**

1    As discussed more fully below, *infra* at 10, the self-support reserve is defined by the New York Family Court Act as "one hundred thirty-five percent of the poverty income guidelines amount for a single person as reported by the federal department of health and human services." N.Y. Fam. Ct. Act § 413(1)(b)(6). Plaintiff alleges that this was $1,219 monthly in 2009. (Compl.¶ 1.)

2    Plaintiff alleges that in 2009 this amount was $1,219 per month. *Supra,* note 1.

3    Notably, veterans' benefit payments are not exempt from attachment or seizure once deposited in a bank account if the debt to be enforced is one for child support. *See Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987); *see also* 42 U.S.C. § 659(h)(1) (allowing Social Security payments to be withheld to enforce child support obligations).

4    Because this Court finds that Plaintiff has failed to state a claim, it is unnecessary to address Defendants' additional arguments that (1) Plaintiff's claims against Hansell are barred by the Eleventh Amendment, especially where even Hansell admits that Plaintiff may still maintain his prospective claims for injunctive relief, and (2) Plaintiff's claims

O'Brien v. Hansell, Not Reported in F.Supp.2d (2010)

2010 WL 1371366

against Doar fail to allege that Doar was personally involved in the deprivation of Plaintiff s constitutional rights, an issue difficult to decide in the absence of a record.

---

**End of Document**                                                            © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 1906594
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,

v.

Governor Kathy HOCHUL, of New York; New York State; Dr. James V. McDonald; Randal B. Caldwell; Megan Johnson; Christina F. Dejoseph; Sandra Milner; Jeffrey A. Domachowski; Karen Stanislaus; Arlene Bradshaw; Julie A. Cecile; Onondaga County Sheriff; Patricia L. DeRue; Sue Ottaviano; Julie A. Cerio; Katie Boyea; David M. Primo; Martha E. Mulroy; Michelle Pirro Baily; Unkown; Hiscock Legal Aid; and Dep't of Health and Soc. Servs., Defendants.

5:24-CV-0048 (DNH/ML)
|
Signed May 1, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, Post Office Box 7124, Syracuse, New York 13261.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* ("IFP") (Dkt. No. 2) and a motion for permission to file electronically in ECF (Dkt. No. 3) filed by Ellis Davon Dudley, II ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 2), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend, and (3) deny without prejudice Plaintiff's motion for permission to file electronically (Dkt. No. 3).

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his rights were violated by Defendants Governor Kathy Hochul, New York State, Dr. James V. McDonald, Randal B. Caldwell, Megan Johnson, Christina F. Dejoseph, Sandra Milner, Jeffrey A. Domachowski, Karen Stanislaus, Arlene Bradshaw, Julie A. Cecile, Onondaga County Sheriff, Patricia L. DeRue, Sue Ottaviano, Julie A. Cerio, Katie Boyea, David M. Primo, Martha E. Mulroy, Michelle Pirro Baily, Unknown, Hiscock Legal Aid, and Department of Health and Social Service (collectively "Defendants"), who were all involved in Plaintiff's state court family proceedings. (*See generally* Dkt. No. 1.)

The Complaint is difficult to decipher (*id.*), but alleges that Plaintiff has two minor children, whom Plaintiff refers to as "blue child" and "pink child" throughout the Complaint. (Dkt. No. 1 at 2.) The Complaint provides a timeline of Plaintiff's experiences with the New York State Family Court system dating back to July 9, 2019. (*Id.*) The crux of Plaintiff's grievance appears to be that (1) the court-ordered child support is excessive, (2) Plaintiff and his family have somehow "lost" their nationality because of the family court proceedings, and (3) Plaintiff's wages were garnished to pay his court-ordered child support and he did not consent to the seizure of his property. (*See generally* Dkt. No. 1.)

The Complaint appears to assert the following nine causes of action: (1) a claim of racketeering, (2) a claim that Plaintiff's rights pursuant to the First Amendment and 42 U.S.C. § 1983 were violated; (3) a claim that Plaintiff's rights pursuant to the Second Amendment and 42 U.S.C. § 1983 were violated; (4) a claim that Plaintiff's rights pursuant to the Fourth Amendment and 42

2024 WL 1906594

U.S.C. § 1983 were violated; (5) a claim that Plaintiff's rights pursuant to the Fifth Amendment and 42 U.S.C. § 1983 were violated; (6) a claim that Plaintiff's rights pursuant to the Sixth Amendment and 42 U.S.C. § 1983 were violated; (7) a claim that Plaintiff's rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983 were violated; (8) a claim that Plaintiff's rights pursuant to the Thirteenth Amendment and 42 U.S.C. § 1983 were violated; and (9) a claim that Plaintiff's rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 were violated. (Dkt. No. 1 at 6.) As relief, Plaintiff seeks damages in the "amount of 20 million dollars or a full disclosure of all contract terms for a consideration to acceptance at the agreement of terms of competition. As well [as] an immediate stop to the organization tasks with damaging and seizure [of Plaintiff's] property." (*Id.*)

**\*2** Plaintiff also filed an application to proceed IFP. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted. [3] (*Id.*)

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and

2024 WL 1906594

holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Alleging "Racketeering"

To the extent that the Complaint is construed as alleging a claim pursuant to 18 U.S.C. § 1691 et seq., ("RICO") I recommend that it be dismissed. [4]

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.' " *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

**\*4** The Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, the Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' "). The Complaint fails to allege any acts of racketeering activity and instead merely uses the word "racketeering" in a conclusory fashion without facts plausibly suggesting the commission of any predicate acts. (*See generally* Dkt. No. 1.)

For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

2024 WL 1906594

### B. Claims Pursuant to 42 U.S.C. § 1983

After carefully considering Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that they be dismissed for three reasons.

First, to the extent that there are final state court orders or judgments that Plaintiff asks this Court to overturn, those claims are barred by the *Rooker-Feldman* doctrine. *Porter v. Nasci*, 24-CV-0033, 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (Dancks, M.J.) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)) ("Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Porter*, 2024 WL 1142144, at *4 (citing *Sims v. Kaufman*, 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court or the Oneida County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine. *See, e.g., Phillips v. Wagner*, 22-CV-0833, 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) (Lovric, M.J.) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022) (Hurd, J.), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

**\*5** Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' ")). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, 19-CV-0097, 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (Stewart, M.J.) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (Sannes, J.).

Second, Plaintiff's claims are likely barred pursuant to the domestic relations exception to the jurisdiction of federal courts. *Dudley v. Montaque*, 24-CV-0223, 2024 WL 1464346, at *4 (N.D.N.Y. Apr. 4, 2024) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *Oliver v. Punter*, 22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted)) ("under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce,

2024 WL 1906594

alimony, and child custody remain outside this Court's jurisdiction."). Accordingly, this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support. *See Rotondo v. New York*, 17-CV-1065, 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) (Peebles, M.J.) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017) (Sharpe, J.); *Cruz v. New York*, 17-CV-0510, 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) (Dancks, M.J.), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Third, the claims against Defendants are not cognizable.

### 1. Claims Against Defendant Hochul

Sovereign immunity bars Plaintiff's claims for damages against Defendant Hochul in her official capacity. Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Because Plaintiff's claims for damages against Defendant Hochul in her official capacity is effectively an "action[ ] for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

**\*6** Moreover, to the extent that Plaintiff's claims against Defendant Hochul in her official capacity seek prospective relief and to the extent that Plaintiff's claims are construed as against Defendant Hochul in her individual capacity, I recommend that they be dismissed for failure to allege Defendant Hochul's personal involvement in any constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendant Hochul as a party, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendant Hochul be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2. Claims Against Defendant New York State

As set forth above, sovereign immunity pursuant to the Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Accordingly, I recommend that Plaintiff's claims asserted against the New York State be dismissed pursuant to Section 1915(e)(2)(B)(i).

2024 WL 1906594

### 3. Claims Against Defendant McDonald

The Complaint identifies Defendant McDonald "as the commissioner of the Department of Health in New York State." (Dkt. No. 1 at 1.) To the extent that the Complaint is construed as asserting claims against Defendant McDonald in his official capacity, he is immune from suit pursuant to the Eleventh Amendment.

Moreover, to the extent that the Complaint is construed as asserting claims against Defendant McDonald in his individual capacity, I recommend that they be dismissed for failure to assert his personal involvement in any constitutional violation.

### 4. Claims Against Defendant Caldwell

Judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Caldwell, in his capacity as a family court judge in Oneida County. (Dkt. No. 1 at 6.) Defendant Judge Caldwell is therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendant Caldwell in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Caldwell in his official capacity be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

### 5. Claims Against Defendants Johnson, Ottaviano, Boyea, and Primo

**\*7** The Complaint alleges that Defendant Johnson was an "Onondaga Family Court attorney" who was tasked with conducting a "virtual meeting call for the Onondaga County family Courthouse." (Dkt. No. 1 at 2.) The Complaint alleges that Defendant Ottaviano was a court assistant who postponed a hearing that was scheduled for February 15, 2023. (Dkt. No. 1 at ¶ 18.) The Complaint alleges that Defendant Boyea was a "Secretary" who emailed a modified custody order signed by Defendant Cecile. (Dkt. No. 1 at ¶ 23.) Finally, the Complaint alleges that Defendant Primo is the Clerk of the Court in Onondaga County Family Court (Dkt. No. 1 at ¶ 10) and he notified the parties of a hearing scheduled on July 20, 2023 (*id.* at ¶ 22).

"As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing

*Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Judicial immunity has been extended to judicial law clerks, the New York State Chief Administrative Judge, court attorneys, and the chief clerks of several state courts. *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)).

As a result, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo in their individual capacities be dismissed, because they are immune from suit. [5] *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

**\*8** Moreover, I recommend that Plaintiff's claims against Defendants Johnson, Ottviano, Boyea, and Primo in their official capacities as employees of the Onondaga Family Court be dismissed because the Onondaga Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 6. Claims Against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily

Plaintiff's claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily relate to their capacities as Onondaga County Family Court judges. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their official capacities are essentially claims against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 7. Claims Against Defendants DeRue and Domachowski

Plaintiff's claims against Defendants DeRue and Domachowski relate to their roles as Onondaga County Family Court support magistrates. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants DeRue and Domachowski in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. *See Miller v. Primo*, 23-CV-1051, 2023 WL 6379325, at *6 (N.D.N.Y. Sept. 29, 2023) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against "Defendants DeRue and Domachowski, who acted as the support magistrate judges" and finding that such claims "are barred under the doctrine of judicial immunity"), *report and recommendation adopted by* 2023 WL 754323 (N.D.N.Y. Nov. 14, 2023) (Sannes, C.J.). Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants DeRue and Domachowski in their official capacities are essentially claims against New York State, and are immune from suit pursuant to the Eleventh Amendment.

2024 WL 1906594

### 8. Claims Against Defendant Stanislaus

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

**\*9** As a result, I recommend that Plaintiff's claim against Defendant Stanislaus in her individual capacity be dismissed based on the doctrine of absolute judicial immunity. *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *5 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against Defendant Stanislaus because she was entitled to absolute judicial immunity as a court attorney referee), *report and recommendation adopted by* 2022 WL 16551700 (N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.).

Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, any claim against Defendant Stanislaus in her official capacity is essentially a claim against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 9. Claims Against Defendant Bradshaw

Based on the allegations contained in the Complaint, it appears that Defendant Bradshaw was an attorney appointed to represent one of Plaintiff's minor children. (Dkt. No. 1 at ¶ 16.) The Second Circuit has held that "law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Bradshaw be dismissed.

### 10. Claims Against Defendant Onondaga County Sheriff

Defendant Onondaga County Sheriff is merely a department of a municipality, and thus, is not amenable to suit. *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that Plaintiff's claims against Defendant Onondaga County Sheriff be dismissed because it is not an entity amenable to suit. [6]

### 11. Claims Against Defendant Hiscock Legal Aid

**\*10** The Complaint alleges that Defendant Hiscock Legal Aid and attorneys employed by it represented the mother of Plaintiff's minor children during the State Family Court proceedings. (Dkt. No. 1 at ¶ 5.) Notwithstanding the appointment of Defendant Hiscock Legal Aid as legal representation, it was not a state actor for purposes of 42 U.S.C. § 1983. "Although [Defendant Hiscock Legal Aid was] supplied and funded by the state, [it] act[ed] according to the best interests of [its] client with 'no obligation to the mission of the state.' " *Milan*, 808 F.3d at 964 (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986)) (internal quotation omitted).

As a result, I recommend that Plaintiff's claims against Defendant Hiscock Legal Aid be dismissed.

### 12. Claims Against Defendant Department of Health and Social Service

It is unclear based on the allegations in the Complaint if Defendant Department of Health and Social Service is a division of New York State or Onondaga County. To the extent that it is a department of New York State, it is immune from suit pursuant to the Eleventh Amendment as set forth in Part IV.B.1 of this Order and Report-Recommendation. To the extent that Defendant Department of Health and Social Service is a department of Onondaga County, it is not amenable to suit pursuant as set forth above in Part IV.B.10 of this Order and Report-Recommendation. [7]

### 13. Claims Against Defendants Milner and Unknown

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

The Complaint names Milner and Unknown as defendants, but the body lacks any allegations of wrongdoing by these individuals. (*See generally* Dkt. No. 1.) As a result, I recommend that the claims against them be dismissed for failure to state a claim upon which relief may be granted.

For each of these alternative reasons, I recommend that the Complaint be dismissed in its entirety.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

2024 WL 1906594

**\*11** Here, better pleading could not cure the deficiencies described above. As a result, I recommend that Plaintiff's Complaint be dismissed without leave to replead.

## VI. PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and password is denied without prejudice. (Dkt. No. 3.) "Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at \*11 (N.D.N.Y. June 6, 2017) (Baxter, M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at \*3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 3) is **DENIED without prejudice**; and it is further respectfully

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1906594

---

**Footnotes**

1      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial

---

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00974-AJB-ML Document 8 Filed 05/13/26 Page 170 of 171

Dudley v. Hochul, Not Reported in Fed. Supp. (2024)
2024 WL 1906594

criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3  Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4  Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.) As a result, I recommend that, in the alternative, Plaintiff's RICO claim be dismissed. *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, *12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, *6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

5  In the alternative, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed because the Complaint fails to allege the personal involvement of them in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendants Johnson, Ottaviano, Boyea, and Primo as parties to the action, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

6  Even if Plaintiff's claims against Defendant Onondaga County Sheriff were liberally construed as against Onondaga County, I would recommend that they be dismissed. There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a discrete incident, during which an officer or individual employed by Defendant Onondaga County Sheriff did not act properly. (Dkt. No. 1 at 4.) There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Onondaga County.

7  Further, as set forth above in note 6, *supra*, to the extent that the Complaint is liberally construed as alleging a claim against Onondaga County, it fails to allege any basis for municipal liability.

8  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Dudley v. Hocul, Not Reported in Fed. Supp. (2024)**

2024 WL 2399913

2024 WL 2399913
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,
v.
Governor Kathy HOCUL et al., Defendants.

5:24-CV-48
|
Signed May 23, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, P.O. Box 7124, Syracuse, NY 13261.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On January 11, 2024, *pro se* plaintiff Ellis Javon Dudley, II ("plaintiff") filed this action alleging that the named defendants violated his civil rights in connection with certain family-court proceedings being conducted under New York State law. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2, and for leave to file documents electronically, Dkt. No. 3.

On May 1, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, denied his request to file electronically, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed *without* leave to amend. Dkt. No. 5. As Judge Lovric explained, plaintiff's RICO claims were procedurally deficient and substantively meritless, while plaintiff's 42 U.S.C. § 1983 claims were barred by various claim-preclusion principles. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 5. Upon review for clear error, the R&R is accepted and will be adopted. *See* FED R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without leave to amend.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2399913

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.